# No. 24-10651

# In the United States Court of Appeals for the Eleventh Circuit

FAIRFIELD SOUTHERN COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

Respondent.

On Petition for Review of a Final Order of the
Benefits Review Board, United States Department of Labor
Agency Docket Nos. 23-1080 BLA, 23-1080-A BLA, 18-0567 BLA

———————————————————

## Brief of Petitioner

———————————————————

Kary B. Wolfe
Jones Walker
420 20th St. N
Birmingham, AL 35203
(205) 244-5281
kwolfe@joneswalker.com

Alice E. Loughran
Mark C. Savignac
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)
aloughran@steptoe.com
msavignac@steptoe.com

Attorneys for Petitioner

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 26.1-1, Petitioner Fairfield Southern Company submits this certificate of interested parties and corporate disclosure statement.

## A.    Corporate Disclosure Statement

Petitioner is a wholly owned subsidiary of Birmingham Southern Railroad Company, which is wholly owned by Transtar, LLC. FTAI Infrastructure Inc. is a publicly traded company (NASDQ: FIP) owning ten percent or more of Petitioner's stock.

## B.    Certificate of Interested Persons

Almond, M. Brent, Counsel for Petitioner, Huie, Fernambucq & Stewart, LLP

Barr, Earlene A., Claimant and o/b/o Billie B. Barr, deceased

Bajkowski, Sean, Counsel for U.S. Dept. of Labor

Birmingham Southern Railroad Company, Parent of Petitioner

Boucher, Lauren C., Administrative Law Judge, U.S. Dept. of Labor

Buzzard, Greg J., Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Chance, Michael, Director, OWCP, U.S. Dept. of Labor

Fairfield Southern Company, Inc., Petitioner

FTAI Infrastructure Inc. (FIP), Parent of Transtar, LLC

Gresh, Daniel T., Chief Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Huie, Fernambucq & Stewart, LLP

Jacobs, John R., Counsel for Claimant, Maples Tucker & Jacobs LLC

Jones Walker LLP

Jones, Melissa Lin, Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Joyner, Barry H., Associate Solicitor for Black Lung and Longshore Legal Services, U.S. Dept. of Labor

Kim, Kathleen H., Attorney, U.S. Dept. of Labor

Loughran, Alice E., Counsel for Petitioner, Steptoe LLP

Maples Tucker & Jacobs LLC

Nanda, Seema, Solicitor of Labor, U.S. Dept. of Labor

Odegard, Adele H., Administrative Law Judge, U.S. Dept. of Labor

Rolfe, Jonathan, Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Romero, Jr., Lee J., Administrative Law Judge, U.S. Dept. of Labor

Savignac, Mark, Counsel for Petitioner, Steptoe LLP

Shepherd, Jr., Thomas O., Clerk of the Appellate Boards, U.S. Dept. of Labor

Steptoe LLP

Su, Julie, Acting Secretary of Labor, U.S. Dept. of Labor

Transtar, LLC, Parent of Petitioner

Walker, J. Thomas, Counsel for Claimant, Maples Tucker & Jacobs LLC

Wolfe, Kary Bryant, Counsel for Petitioner, Jones Walker LLP

## TABLE OF CONTENTS

Certificate of Interested Persons and  Corporate Disclosure Statement ..............................................................................C-1

Glossary ....................................................................................vii

Statement Regarding Oral Argument .............................................ix

Jurisdictional Statement ............................................................... 1

Statement of Issues...................................................................... 2

Statement of Case ........................................................................ 2

     A.    Statutory Background.................................................... 2

     B.    Relevant Facts ............................................................ 4

     C.    Procedural history and agency decisions ....................... 9

          1.    Proceedings before ALJ Odegard ................... 9

          2.    Proceedings before ALJ Romero....................14

          3.    The Board Decisions ....................................17

Summary of Argument ...................................................................21

Argument .....................................................................................27

I.    The Board erred in ruling that Barr established 15 years of employment "in one or more underground coal mines," as required to invoke the § 921(c)(4) presumption.................27

     A.    The standard of review .................................................27

     B.    The Black Lung Benefits Act: Key definitions and burden of proof.............................................................29

     D.    Barr spent his entire employment operating trains aboveground and, for his Fairfield work, was seven miles away from an underground coal mine .................32

II.    The Board exceeded its statutory authority and scope of review by reviewing the ALJs findings of fact *de novo*............50

    A.    The Board is required to accept the ALJ's factual findings when supported by substantial evidence.........51

    B.    The ALJ's factual findings were supported by substantial evidence and thus should have been conclusive.................................................................52

Conclusion ....................................................................63

Certificate of Compliance .............................................64

Certificate of Service ....................................................65

TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Avondale Industries v. Director, OWCP,*
  977 F.2d 186 (5th Cir. 1992).....................................................52

*Board of Chosen Freeholders of County of Hudson v.*
  *Central Railway Co. of New Jersey,*
  59 A. 303 (N.J. Ch. 1904)........................................................34

*Brandywine Explosives & Supply v. Director,*
  790 F.3d 657 (6th Cir. 2015).....................................................32

*Burs v. Director, Office of Workers' Compensation Program,*
  41 F.3d 1555 (D.C. Cir. 1994) ..................................................52

*Chevron, U.S.A., Inc. v. Natural Resources Defense*
  *Council, Inc.,*
  467 U.S. 837 (1984).....................................................28, 45, 50

*Decker Coal Co. v. Pehringer,*
  8 F.4th 1123 (9th Cir. 2021) ...............................................32, 42

*DHS v. MacLean,*
  574 U.S. 383 (2015) ................................................................36

*Director v. Midland Coal Co.,*
  855 F.2d 509 (7th Cir. 1988).....................................................42

*Director v. Rowe,*
  710 F.2d 251 (6th Cir. 1983).....................................................52

*Director, OWCP v. Drummond Coal Co.,*
  831 F.2d 240 (11th Cir. 1987)...............................................28, 34

*Encino Motorcars, LLC v. Navarro,*
  584 U.S. 79 (2018)..................................................................49

*General American Indemnity Co. v. Pepper,*
  339 S.W.2d 660 (Tex. 1960) .....................................................34

*Helen Mining Co. v. Elliott*,
    859 F.3d 226 (3d Cir. 2017) ......................................................35

*Heyman v. Cooper*,
    31 F.4th 1315 (11th Cir. 2022)..........................................33, 35

*Home Ins. Co. v. Pett*,
    143 So. 839 (Ala. 1932) ...........................................................34

*Island Creek Coal Co. v. Compton*,
    211 F.3d 03 (4th Cir. 2000) .....................................................51

*King v. Dir., OWCP.*,
    904 F.2d 17 (9th Cir. 1990).....................................................51

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) ......................................... 21, 27, 28, 46

*Muncy v. Elkay Mining Co.*,
    25 BLR 1-21, 2011 WL 6140705 (2011)...................................43

*National Association of Home Builders v. Defenders of
    Wildlife*,
    551 U.S. 644 (2007) ................................................................37

*Newport News Shipbuilding & Dry Dock Co. v. Loxley*,
    934 F.2d 511 (4th Cir. 1991) ...................................................52

*Pacific Coast Med. Enters. v. Harris*,
    633 F.2d 123 (9th Cir. 1980)...................................................46

*Peabody Coal Co. v. Groves*,
    277 F.3d 829 (6th Cir. 2002)...................................................52

*Santos v. Healthcare Revenue Recovery Group, LLC*,
    90 F.4th 1144 (11th Cir. 2024)..........................................36, 37

*Savage Services Corp. v. United States*,
    25 F.4th 925 (11th Cir. 2022) ...........................................37, 40

*Secretary of Labor v. National Cement Co. of California, Inc.*,
  494 F.3d 1066 (D.C. Cir. 2011) ................................................45

*Sloan v. Drummond Co., Inc.*,
  102 F.4th 1169 (11th Cir. 2024)................................................1

*Sunnyside Coal Co. v. Director, OWCP*,
  112 F.4th 902 (10th Cir. 2024)...................................48, 49, 50

*United States v. Balde*,
  943 F.3d 73 (2d Cir. 2019) .......................................................34

*Usery v. Turner Elkhorn Mining Co.*,
  428 U.S. 1 (1976)..............................................................39, 47

*Whitmore v. AFIA Worldwide Ins.*,
  837 F.2d 513 (D.C. Cir. 1988) ................................................51

*William Brothers, Inc. v. Pate*,
  833 F.2d 261 (11th Cir. 1987).........................................28, 29

**Statutes**

30 U.S.C. § 802 ........................................................................32

30 U.S.C. § 802(h)(1)...............................................................46

30 U.S.C. § 802(h)(2)...............................................................32

30 U.S.C. § 902(d).........................................................22, 29, 36

30 U.S.C. § 921(a)....................................................................39

30 U.S.C. § 921(c)(3) .....................................19, 20, 38, 39, 40, 42

30 U.S.C. § 921(c)(4)  3, 4, 21, 22, 23, 24, 27, 29, 30, 31, 32, 34, 35, 36, 38, 39-43, 45, 46, 47, 49, 50

30 U.S.C. § 922(a)(1) ..................................................................2

30 U.S.C. § 924(c)(4) ........................................................2, 10, 17

30 U.S.C. § 931(c) ......................................................................2

30 U.S.C. § 932(a) ............................................................... 1

33 U.S.C. §§ 919 and 921 ..................................................51

33 U.S.C. § 921(b)(3) ............................... 1, 2, 26, 50, 51

33 U.S.C. § 921(c) ........................................................ 1, 38

**Other Authorities**

20 C.F.R. § 718.305(b)(1) .................................................32

20 C.F.R. § 725.101(a)(30)...............................................43

20 C.F.R. § 802.406 ............................................................ 1

S. Rep. No. 92-743, 11, *reprinted in* 1972 U.S.C.C.A.N
    2305 ...................................................................................30

## GLOSSARY*

| SHORT FORM | DESCRIPTION |
|---|---|
| A. | Appendix filed with this opening brief. |
| Act | Black Lung Benefits Act, 30 U.S.C. §§ 901-944 |
| Addendum | Statutory and regulatory addendum (attached to this brief) |
| ALJ | Administrative Law Judge |
| Barr | Billie B. Barr, the railroad operator/engineer and claimant in this case. |
| Board | Benefits Review Board, an administrative appellate body within the Department of Labor. |
| Concord Mine | The Concord underground mine, which U.S. Steel operated in Alabama until its closure in 1983. |
| Concord preparation plant | A plant in Alabama for preparing coal for shipment via truck or rail to the end user. This plant was located seven miles away from the underground coal mine. |
| Director | Director of the U.S. Department of Labor's Office of Workers' Compensation Program |

---

* While not required by rule, the Glossary is provided for the Court's convenience.

| Fairfield | Fairfield Southern Company, the self-insured employer and petitioner in this case. |
|---|---|

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Fairfield Southern Company requests oral argument. This appeal raises questions of first impression regarding the scope and application of the Black Lung Benefits Act, 30 U.S.C. §§ 901-945.

## JURISDICTIONAL STATEMENT

The Benefits Review Board ("Board") had subject matter jurisdiction pursuant to 30 U.S.C. § 932(a) and 33 U.S.C. § 921(b)(3). The Board had jurisdiction because the Claimant applied for benefits pursuant to the Black Lung Benefits Act and the employer (Fairfield) filed a timely administrative appeal from an ALJ benefits award. *See* Appendix ("A") at A544, A566.[1]  On January 18, 2024, the Board issued its final order.  A144-150; 20 C.F.R. § 802.406.

This Court has subject matter jurisdiction pursuant to 33 U.S.C. § 921(c).  On March 4, 2024, Fairfield timely filed its petition for review.  *See* 33 U.S.C. § 921(c) (timely when filed within 60 days of the agency's final order), *as incorporated into* 30 U.S.C. § 932(a); *Sloan v. Drummond Co., Inc.*, 102 F.4th 1169, 1175 (11th Cir. 2024).  This case is in this Circuit because the employee alleged

---

[1] Since there was no uniform numbering before the agency here, counsel prepared the appendix using tabs alphabetically marked (Tab A, Tab B, Tab C, *etc.*).  To assist the reader, each page in the appendix is sequentially numbered in the lower right-hand corner (A1, A2, A3, *etc.*).  The "A#" references appear in the text of this brief, and the description of the cited document along with the Appendix Tab appear in the footnotes.

that he was injured in Alabama. *See* 30 U.S.C. § 931(c) (place-of-injury rule).

### STATEMENT OF ISSUES

**1.** Whether the Board erred as a matter of law in ruling that the railroad engineer was "employed for fifteen years or more in one or more underground mines" within the meaning of 30 U.S.C. § 924(c)(4).

**2.** Whether the Board exceeded its statutory authority and scope of review under 33 U.S.C. § 921(b)(3) by reviewing the ALJ's findings of fact *de novo*.

### STATUTORY PROVISIONS INVOLVED

Pertinent statutory and regulatory provisions are reproduced in the statutory addendum (attached hereto).

### STATEMENT OF CASE

#### A.   Statutory Background

The Black Lung Benefits Act ("Act") provides compensation to coal "miners" who are "totally disabl[ed] … due to pneumoconiosis." 30 U.S.C. § 922(a)(1). This Act is not a strict liability statute. To receive benefits, the Claimant ordinarily must establish four elements:

(1)    *disease* (pneumoconiosis);

(2)    *disease causation* (the pneumoconiosis arose out of coal mine employment);

(3)    *disability* (miner is totally disabled); and

(4)    *disability causation* (total disability is caused by pneumoconiosis).

The Act, however, creates a rebuttable presumption for a Claimant who was "employed for fifteen years or more in one or more underground coal mines" and who proves a totally disabling respiratory disease. 30 U.S.C. § 921(c)(4) (Addendum 4-5). Under this provision, if the miner establishes the disability element plus 15 years of employment "in one or more underground coal mines," the miner is entitled to a rebuttable presumption that the remaining three elements (disease, disease causation, and disability causation) have been established. *See id.*

In this case, the Claimant did not satisfy his burden of proving the four elements set forth above. (A25-A48, A111-A120).[2] This case thus turned on whether the Claimant established the 15 years of

_____

[2] ALJ Odegard Decision and Order Denying Benefits at 18-41 (Aug. 15, 2014) (Appendix Tab C); ALJ Romero Decision and Order Denying Benefits on Modification at 50-58 (Aug. 3, 2018) (Appendix Tab E).

3

employment "in one or more underground coal mines" required to invoke the statutory presumption in § 921(c)(4).  (A145.)[3]

## B. Relevant Facts

Claimant Billie Barr ("Barr") never worked in an underground coal mine.  (A543.)[4]   He worked aboveground as a railroad operator/engineer.  (A18, A203.)[5]

Starting in 1965, Barr worked on and off for U.S. Steel as a locomotive engineer.  (A93, A182-A183, A202-A203.)[6]  Barr's duties included delivering empty rail cars to the Concord Mine, an underground mine, and then hauling the loaded rail cars to by-

---

[3] *See* Benefits Review Board Decision and Order at 2 (Jan. 27, 2021) (Appendix Tab F).

[4] Claimant's Brief in Support of an Award of Benefits at 14 (Feb. 2018) ("Claimant was not an employee of the underground mine ….") (Appendix Tab R).

[5] ALJ Odegard Decision and Order Denying Benefits at 11 (Aug. 15, 2014) ("All of the Claimant's work was as a rail transport operator.") (Appendix Tab C).  Barr testified that his job title was rail "operator" but that it was functionally the "same work" as a railroad engineer. *See* 2013 Hearing Tr. 41:4-8 (Appendix Tab M).  For clarity, this brief refers to Barr's work by its responsibilities—a locomotive engineer—rather than his job title.

[6] ALJ Romero Decision and Order Denying Benefits on Modification at 31 (Aug. 3, 2018) (Appendix Tab E); 2013 Hearing Tr. 20-21, 40-41 (Appendix Tab M).

products plants where the steel was made. (A182-183, A188, A190, A224, ).[7] Barr generally stayed inside the train car while the Concord employees loaded the coal into the rail cars. (A185, A187-A189.)[8] On days when he was assigned to the Concord Mine, Barr made one trip each day to the coal mine. (A221, A182-184, A187-88).[9] On days when he was not assigned to the Concord Mine, Barr operated trains to and from sites that were not operating coal mines. (A200-01.)[10] In 1983, the Concord Mine closed down permanently. (A55.)[11] Between 1965 and 1983, Barr had significant periods of time when he was not working for U.S. Steel including following his arrest, conviction, jail time, and furloughs. (A91-A92.)[12]

---

[7] 2013 Hearing Tr. 20-21, 26, 28, 62 (Appendix Tab M); 2017 Hearing Tr. 29, 33 (Appendix Tab O).

[8] 2013 Hearing Tr. 23 ("We didn't fill those cars. Concord workers did that."); *see id.* at 25-27 (Appendix Tab M).

[9] 2013 Hearing Tr. 59:8-21 (Appendix Tab M); *see id.* at 20-22, 25-26.

[10] 2013 Hearing Tr. 38-39 (Appendix Tab M); 2017 Hearing Tr. 44-45, 50 (Appendix Tab O).

[11] ALJ Odegard Decision and Order on Reconsideration at 3-4 (Oct. 3, 2014).

[12] ALJ Romero Decision and Order Denying Benefits on Modification at 29-30 (Aug. 3, 2018) (Appendix Tab E).

Starting in 1984, Barr worked on and off for Fairfield as a locomotive engineer. (A75, A93, A95, A330.)[13] Fairfield is not a mining operation, and Barr's work at Fairfield did not take him anywhere near an underground coal mine. (A201.)[14] Initially, Barr hauled processed coal by rail from the Concord preparation plant. (A200, A203-04.)[15] That coal came from the Oak Grove underground mine seven miles away. (A203-04, A238.)[16] At Oak Grove, the coal was cut and then transferred over two conveyor belts for seven miles to the Concord preparation plant. (A235, A239.)[17] At the Concord preparation plant, the coal was washed, dried, and stored before being shipped by rail or truck to the end user. (A204, 205, A236, A239, A242, A246, A268.)[18] Barr spotted the rail cars as the coal was poured into the cars. (A191, A205, A213, A215-16, A246,

---

[13] 2018 ALJ Romero Decision on Modification at 13, 31, 33 (Appendix Tab E); 2013 Hearing Tr. 28, 41, 59 (Appendix Tab M); 2017 Hearing Tr. 37 (Appendix Tab O).

[14] 2013 Hearing Tr. 39:2-4 (Appendix Tab M).

[15] 2013 Hearing Tr. 38, 41-42 (Appendix Tab M).

[16] 2013 Hearing Tr. 41-42, 76 (Appendix Tab M).

[17] 2013 Hearing Tr. 73 ("[A] seven mile two belt system. One was four miles, one was three miles long."); *see id.* at 77 (Appendix Tab M).

[18] 2013 Hearing Tr. 42, 43, 74, 77, 80, 84, 106 (Appendix Tab M).

A247.)[19]  The coal at that point was wet "almost like mud."  (A243, A246.)[20]  The dust levels at the Concord preparation plant were "extremely low."  (A24-25, A272-74.)[21]  Fairfield employees had access to bath houses and comfort respirators but Barr and others did not request to use them.  (A385-86, A391.)[22]  As one supervisor explained, he would "wash [his] hands and go home and [he] was fine."  (A251.)[23]  In 1987, Barr stopped hauling from the Concord preparation plant.  (A218, A234, A245.)[24]  He hauled non-coal products for Fairfield from 1987 until his retirement in early 1997. (A217, A218, A234, A244-45.)[25]

---

[19] 2013 Hearing Tr. 29, 43, 51, 53-54, 84, 85 (Appendix Tab M).

[20] 2013 Hearing Tr. 81, 84 (Appendix Tab M); *see id.* at 108 (no raw coal).

[21] ALJ Odegard Decision and Order Denying Benefits at 17-18 (Aug. 15, 2014) (Appendix Tab C); 2013 Hearing Tr. 110-12 (Appendix Tab M).  Testing showed a minuscule level of dust (0.16  per cubic meter) in relation to the OSHA permissible exposure limits (10 per cubic meter).  *See* 2017 Hearing Tr. 55-56 (Appendix Tab O).

[22] 2017 Hearing Tr. 92-93, 98 (Appendix Tab O).

[23] 2013 Hearing Tr. 89 (Appendix Tab M).

[24] 2013 Hearing Tr. 56, 72, 83 (Appendix Tab M).

[25] 2013 Hearing Tr. 55, 56, 72, 82-83 (Appendix Tab M); 2017 Hearing Tr. 48, 96 (Appendix Tab O).

Barr was obese and a heavy smoker almost his entire adult life. (A153-54.)[26] He smoked about two packs of cigarettes a day for four decades, starting at the age of 17 or 18. (A207-08, A209.)[27] He also smoked a pipe and up to three bowlfuls of pipe tobacco per day. He started experiencing breathing problems in 1994 but continued smoking. (A192, A209.)[28] In 1997, he started using oxygen tanks eight hours a day and experienced congestive heart failure. (A192, A208, A209.)[29] He quit smoking at that point. (A211.)[30] He died in August 2013 at the age of 74. (A73.)[31]

---

[26] Medical History and Examination for Coal Mine Workers' Pneumoconiosis at 3-4 (Dec. 12, 1994) (Appendix Tab I).

[27] 2013 Hearing Tr. 45-46, 47 (Appendix Tab M).

[28] 2013 Hearing Tr. 30, 47 (Appendix Tab M); Medical History and Examination for Coal Mine Workers' Pneumoconiosis at 4 (Dec. 12, 1994) (Appendix Tab I).

[29] 2013 Hearing Tr. 30, 46, 47 (Appendix Tab M).

[30] 2013 Hearing Tr. 49 (Appendix Tab M).

[31] ALJ Romero Decision and Order Denying Benefits on Modification at 11 n.8 (Aug. 3, 2018) (Appendix Tab E).

### C.    Procedural history and agency decisions

Barr never filed a workers' compensation claim under state law. (A162.)[32]  In 1994 and 2001, Barr filed claims for benefits under the Black Lung Benefits Act.  (A84.)[33]  No other Fairfield employee has ever filed for benefits under the Black Lung Benefits Act.  (A275, A344.)[34]  Barr's first two claims were administratively denied. (A84.)[35]  His third claim, filed in June 2011, was referred to an ALJ for a formal hearing.

### 1.    Proceedings before ALJ Odegard

In January 2013, ALJ Odegard held a hearing on Barr's third claim.  Barr testified on his own behalf, and Fairfield presented two witnesses.  (A181, A232, A265.)[36]  After the hearing, Barr passed

---

[32] Request for State or Federal Workers' Compensation Information (Appendix Tab L).

[33] ALJ Romero Decision and Order Denying Benefits on Modification at 22 (Aug. 3, 2018) (Appendix Tab E).

[34] 2013 Hearing Tr. 113 (Appendix Tab M); 2017 Hearing Tr. 51 (Appendix Tab O).

[35] ALJ Romero Decision and Order Denying Benefits on Modification at 22 (Aug. 3, 2018) (Appendix Tab E).

[36] 2013 Hearing Tr. 19, 70, 103 (Appendix Tab M).

away. (A11.)[37] His wife pursued Barr's claim on behalf of his estate and also separately filed for survivor benefits under the Act—meaning that her claim is dependent upon his. (A11.)[38] (For simplicity, any reference in this brief to "Barr's claim" includes both his estate's claim for benefits and his wife's survivor's claim.)

In August 2013, ALJ Odegard denied Barr's claim for benefits. First, ALJ Odegard ruled that Barr had "not established at least 15 years of qualifying employment" and thus was unable to benefit from the rebuttable presumption in Section 924(c)(4). (A25.)[39] ALJ Odegard concluded that Barr had "14 years, four months" of coal mine employment at U.S. Steel. (A24.)[40] While Barr's testimony was "skimpy at best" as to how often he hauled from the Concord mine, ALJ Odegard "presume[d]" that Barr's entire time at U.S. Steel was

[37] ALJ Odegard Decision and Order Denying Benefits at 4 (Aug. 15, 2014) (Appendix Tab C).

[38] ALJ Odegard Decision and Order Denying Benefits at 4 (Aug. 15, 2014) (Appendix Tab C).

[39] ALJ Odegard Decision and Order Denying Benefits at 18 (Aug. 15, 2014) (Appendix Tab C).

[40] ALJ Odegard Decision and Order Denying Benefits at 17 (Aug. 15, 2014) (Appendix Tab C).

transporting coal from Concord Mine. (A22.)[41] ALJ Odegard counted Barr's U.S. Steel work toward the 15-year presumption because she was restrained by existing Board precedent holding that aboveground work at a coal mine qualifies. As to Barr's Fairfield work, ALJ Odegard found that none of it qualified toward the statutory presumption. (A24-25.)[42] The Concord Preparation Plant was not an underground coal mine and did not have conditions substantially similar to an underground coal mine. (A25.)[43]

Second, ALJ Odegard ruled that Barr could not establish eligibility for benefits absent the statutory presumption. (A49.)[44] Barr failed to establish, by a preponderance of the evidence, disability causation—i.e., that his pneumoconiosis is a substantially

---

[41] ALJ Odegard Decision and Order Denying Benefits at 15 (Aug. 15, 2014) (Appendix Tab C).

[42] ALJ Odegard Decision and Order Denying Benefits at 17-18 (Aug. 15, 2014) (Appendix Tab C).

[43] ALJ Odegard Decision and Order Denying Benefits at 18 (Aug. 15, 2014) (Appendix Tab C).

[44] ALJ Odegard Decision and Order Denying Benefits at 42 (Aug. 15, 2014) (Appendix Tab C).

contributing cause of his disability. (A46.)[45] ALJ Odegard therefore denied Barr's claim for benefits under the Act. (A49.)[46]

Subsequently, ALJ Odegard denied Barr's motion to reconsider. (A53-A59.)[47] ALJ Odegard rejected Barr's renewed argument that the Concord preparation plant should be treated as an underground coal mine. (A56-57.)[48] An underground coal mine is limited to the structures "within the bounds" of the underground mine. (A57.)[49] The Concord preparation plant is "not at the mine site" and "is not even near" the mine site. (A57.)[50] The seven miles of land between

---

[45] ALJ Odegard Decision and Order Denying Benefits at 39 (Aug. 15, 2014) (Appendix Tab C).

[46] ALJ Odegard Decision and Order Denying Benefits at 42 (Aug. 15, 2014) (Appendix Tab C).

[47] ALJ Odegard Decision and Order on Reconsideration (Oct. 3, 2014) (Appendix Tab D).

[48] ALJ Odegard Decision and Order on Reconsideration at 4-5 (Appendix Tab D).

[49] ALJ Odegard Decision and Order on Reconsideration at 5 (Appendix Tab D).

[50] ALJ Odegard Decision and Order on Reconsideration at 5 (Appendix Tab D).

the mine and the preparation plant is not devoted to mining but is undeveloped, forested land.  (A57.)[51]

Barr then filed three subsequent requests for modification of ALJ Odegard's decision—one in 2014, a second in 2015, and a third in 2016.  (A65.)[52]  The District Director denied each request.  (A65.)[53] In September 2016, Barr requested a formal hearing before an ALJ. (A65.)[54]  The District Director then transmitted the case to the ALJ Office for a *de novo* hearing on the modification request.  (A65.)[55]  The case was assigned to ALJ Romero.

---

[51] *See* ALJ Odegard Decision and Order on Reconsideration at 5 (Appendix Tab D).

[52] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 3 (Appendix Tab E).

[53] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 3 (Appendix Tab E).

[54] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 3 (Appendix Tab E).

[55]  2018 ALJ Romero Decision and Order Denying Benefits on Modification at 3 (Appendix Tab E).

## 2.   Proceedings before ALJ Romero

In October 2017, ALJ Romero held a hearing and accepted additional evidence into the record.  (A291.)[56]  Among other evidence, Fairfield presented two witnesses and introduced Barr's personnel file into the record.  (A72-A81.)[57]  The parties submitted post-hearing briefs in February 2018.  (A65.)[58]

In August 2018, ALJ Romero denied Barr's request for modification.  First, ALJ Romero found that Barr failed to prove at least 15 years of employment "in one or more underground coal mines" and thus could not benefit from the statutory presumption. (A97.)[59]  ALJ Romero found that Barr had "14 years" employment with U.S. Steel—not "14 years, four months" as ALJ Odegard had

---

[56] Order Receiving Exhibits into the Record (Mar. 27, 2017) (Appendix Tab N).

[57] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 10-19 (Appendix Tab E); 2017 Hearing Tr. 19, 75 (Appendix Tab O); Employer's Ex. 7 (Barr's personnel file) (Appendix Tab Q).

[58] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 3 (Appendix Tab E).

[59] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 35 (Appendix Tab E).

14

stated. (A93.)[60] The additional "four months" erroneously credited by ALJ Odegard were months when had been laid off. (A92.)[61] ALJ Romero also found that Barr's length of qualifying coal mine employment with U.S. Steel is "likely far less than 14 years." (A95, A93.)[62] Additional evidence introduced before ALJ Romero— including Barr's personnel file—undermined any suggestion that Barr hauled daily from the Concord mine. (A94.)[63] In light of the additional evidence, ALJ Romero could not "presume[]," as ALJ Odegard had, that Barr's total time at U.S. Steel was qualifying coal mine employment. (A95.)[64]

As for the Fairfield employment, ALJ Romero indicated that Barr had two years of work hauling from the Concord preparation

---

[60] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 31 (Appendix Tab E).

[61] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 30 (Appendix Tab E).

[62] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Appendix Tab E); *see id.* 31.

[63] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 32 (Appendix Tab E).

[64] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Appendix Tab E).

plant.  (A75.)[65]  While Barr started working at Fairfield in 1984, he left his employment for several months in 1984 and again in 1986. (A75.)[66]  In any event, ALJ Romero agreed with ALJ Odegard that none of Barr's work at the Concord preparation plant was "qualifying" for purposes of the statutory presumption because the preparation plant was seven miles away from an underground coal mine.  (A95-97.)[67]

Second, ALJ Romero ruled that Barr failed to demonstrate disability causation—that his disability is due to his pneumoconiosis. (A120.)[68]  "I find and conclude Claimant is not entitled to benefits under the Act."  (A120.)[69]

---

[65] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 13 (Appendix Tab E).

[66] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 13 (Appendix Tab E).

[67] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 33-35 (Appendix Tab E).

[68] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 58 (Appendix Tab E).

[69] 2018 ALJ Romero Decision and Order Denying Benefits on Modification at 58 (Appendix Tab E).

Both parties filed administrative appeals from ALJ Romero's decision.[70]

### 3. The Board Decisions

In January 2021, the Board reversed ALJ Romero in relevant part. According to the Board, "[t]he primary issue in this appeal is whether Claimant established that the Miner had at least fifteen years of qualifying coal mine employment to invoke" the statutory presumption in Section 924(c)(4). (A125.)[71]

First, the Board reversed ALJ Romero's factual findings that Barr's coal mine work with U.S. Steel was "likely far less than 14 years." (A133.)[72] The Board characterized ALJ Romero's ruling as stating that Barr had to establish that he worked "exclusively" at the Concord mine to get credit for that employment. (A133.)[73] The

---

[70] Fairfield appealed ALJ Romero's ruling that Barr was a "miner" within the meaning of the Act. The Board affirmed that portion of ALJ Romero's ruling.

[71] 2021 Benefits Review Board Decision and Order at 2 (Appendix Tab F).

[72] 2021 Benefits Review Board Decision and Order at 9 (Appendix Tab F).

[73] 2021 Benefits Review Board Decision and Order at 9 (Appendix Tab F).

regulations define "working day" to mean "any day or part of a day in which a miner received pay for work as a miner." (A133.)[74] The Board cited to Barr's testimony that he loaded coal at the Concord Mine site "one time in one shift … for five days" per week, finding that Barr could have been hauling from the Concord mine and the other sites on the same day. (A133.)[75] Thus, according to the Board, Barr had 14 years of qualifying coal mine employment at U.S. Steel for purposes of the statutory presumption.  (A138.) [76]

Second, the Board credited Barr's years hauling from the Concord preparation plant as putting him past the 15-year threshold. (App. 138.)[77] In doing so, the Board reversed both ALJs' findings that Barr's work at the Concord preparation plant was not "qualifying" for

---

[74] 2021 Benefits Review Board Decision and Order at 9 (Appendix Tab F).

[75] 2021 Benefits Review Board Decision and Order at 9 (Appendix Tab F).

[76] 2021 Benefits Review Board Decision and Order at 9 (Appendix Tab F).

[77] 2021 Benefits Review Board Decision and Order at 14 (Appendix Tab F).

purposes of the statutory presumption. (A136-A138.)[78] The Board treated Barr's employment at a site seven miles away from an underground coal mine as employment "in one or more underground coal mines" because DOL regulations define "underground coal mine" to include facilities "appurtenant" to such a mine. (A134.)[79] The Board read this regulation to sweep in the separate preparation plant seven miles away from the underground mine and connected by two conveyor belts. (A136-38.)[80] The Board did not set forth any clear test as to what constitutes an "appurtenant" and instead indicated loosely that some physical and economic relationship would be needed. (A137.)[81] The Board cited no prior decision—either agency or court—holding that an offsite preparation plant is an "underground coal mine" for purposes of Section 921(c)(3). The Board concluded that Barr had 17 years of qualifying underground

---

[78]  2021 Benefits Review Board Decision and Order at 12-14 (Appendix Tab F).

[79]  2021 Benefits Review Board Decision at 10 (Appendix Tab F).

[80]  2021 Benefits Review Board Decision at 12-14 (Appendix Tab F).

[81]  2021 Benefits Review Board Decision at 12 (Appendix Tab F).

coal mine employment, citing 3 years at Fairfield and 14 years at U.S. Steel.  (A139.)[82]

Thus, the Board ruled that Barr was entitled to the statutory presumption in Section 921(c)(3).  (A138.)[83]  The Board remanded the case "to determine whether Employer has rebutted the presumption." (A139.)[84]  Fairfield moved the Board to reconsider its decision *en banc*.  (A141.)[85]  The Board denied that motion.  (A141.)[86]

On remand, the ALJ determined that Fairfield had not rebutted the statutory presumption and thus ruled that Barr was entitled to benefits under the Act.[87]  Fairfield appealed to the Board, reasserting its prior arguments that Barr failed to show at least 15 years of qualifying employment in underground coal mines to invoke the

---

[82] 2021 Benefits Review Board Decision at 15 (Appendix Tab F).

[83] 2021 Benefits Review Board Decision at 14 (Appendix Tab F).

[84] 2021 Benefits Review Board Decision at 15 (Appendix Tab F).

[85] Benefits Review Board Order on *En Banc* Reconsideration at 1 (Nov. 7, 2022) (Appendix Tab G).

[86] Benefits Review Board Order on *En Banc* Reconsideration at 1 (Nov. 7, 2022) (Appendix Tab G).

[87] January 30, 2023 Decision and Order Awarding Benefits on Remand (Appendix Tab S).

presumption.  (A566.)[88]  Fairfield did not contest the ALJ's findings that, assuming Barr had the benefit of the presumption, Fairfield did not rebut the presumption.  (A148.)[89]

In January 2024, the Board affirmed the ALJ's award of benefits to Barr's estate and his surviving spouse.  (A148-49.)[90]  This petition for review followed.

SUMMARY OF ARGUMENT

**I.**    The Board erred in ruling that Barr had at least 15 years of employment "in one or more underground coal mines" and thus was entitled to a presumption of total disability due to pneumoconiosis under 30 U.S.C. § 921(c)(4).  "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority …."  *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266, 2273 (2024).  In this case, the statutory text, structure, and context all point to the same result:  the 15-year presumption at issue is limited to work *in* an *underground* coal mine,

---

[88] Fairfield's Notice of Appeal (Jan. 30, 2023) (Appendix Tab T).

[89] Benefits Review Board Decision and Order at 5 (Jan. 18, 2024) (Appendix Tab H).

[90] Benefits Review Board Decision and Order at 5-6 (Jan. 18, 2024) (Appendix Tab H).

21

not merely work aboveground at a coal mine.  Thus, none of Barr's work aboveground as a railroad engineer qualifies for the statutory presumption.

The statutory text is unambiguous.  Under the first sentence in § 921(c)(4), miners must be employed for 15 years "*in*" an "underground coal mine."  30 U.S.C. § 921(c)(4).  The Board says that work "aboveground at an underground mine" qualifies (A134), but the words "aboveground" and "at" are not in the statutory language.  If Congress had wanted to sweep in everyone who merely worked "at" or "around" an underground mine, regardless of whether they ever entered the mine, it could easily have done so.  In fact, Congress *did* do so with the Act's definition of "miner."  The Act defines the term "miner" to encompass work "in or around a coal mine."  30 U.S.C. § 902(d).  But the first sentence in § 921(c)(4) is expressly limited to a *smaller* group—miners employed for 15 years in an underground mine—and this was deliberate.  The statutory presumption was based on the Surgeon General's testimony that pneumoconiosis does not become prevalent among miners until they have at least 15 years working in underground mines.

22

The statutory structure and purpose confirm the plain meaning of § 921(c)(4)'s first sentence. Section 921(c)(4)'s second sentence states that "employment in a coal mine other than an underground mine" does not count unless the conditions were substantially similar to conditions in an underground mine. This shows that the 15-year presumption in limited to miners who either (a) work underground and thus are presumed to have had particularly high exposure to coal dust relative to other miners or (b) work aboveground and can demonstrate conditions substantially similar to an underground mine. While Congress deliberately focused on groups with a higher exposure to coal dust relative to others, the Board dispensed with the statutory language and created a new scheme that is not tied to high exposure relative to other miners.

Under the Board's ruling, Barr's employment "aboveground at an underground mine" automatically counts for purposes of the 15-year presumption. (A134.)[91] Even if the Board's interpretation were correct, Barr had at most fourteen years operating trains aboveground at the Concord underground coal mine. The Board

---

[91] 2021 Board Decision at 10 (Appendix Tab F).

relied upon Barr's subsequent work at a preparation plant—located seven miles away from an underground coal mine—to get him past the 15-year threshold. (A138.) Under no rational scenario is employment operating trains aboveground at a site seven miles away from an underground coal mine "employ[ment] … in one or more underground coal mines."

Lacking any basis in the statute, the Board resorted to a Rube Goldberg construction.[92] The Board looked to the DOL regulation—defining "underground coal mine" to include an "appurtenant thereto"—and concluded that § 921(c)(4) captures work at downstream facilities located miles away and physically connected by conveyer belts. But the word "appurtenant" does not appear anywhere in the statute. The statute defines "coal mine" to include structures "placed upon, under, or above the surface" of the land where the coal is being mined. And § 921(c)(4)'s text is deliberately limited to a subset of coal mines—"underground coal mines." The word "underground" must be given its ordinary meaning. The Board

---

[92] *See* Rube Goldberg Machine (a chain reaction–type machine or contraption intentionally designed to perform a simple task in an indirect and impractically over-complicated way).

converted a statutory presumption deliberately limited to sustained employment in underground mines into one that captures employment aboveground and miles away from an underground mine.

The Board's interpretation vastly expands the scope of the statutory presumption.  Under the Board's interpretation, the miner's work does not need much connection to an underground coal mine. It can include properties with some economic and physical relationship to the underground coal mine, and there is no limit on the distance.  This increases exponentially the number of miners potentially eligible for the statutory presumption—far beyond what Congress intended and what employers and their insurers planned for.  In the post-*Chevron* era, the Court is not bound by the agency's interpretation of the statute nor by the agency's construction of its own regulation.  The regulation is invalid as construed by the Board but, instead of holding it invalid, the Court should simply reject the Board's broad interpretation of the word "appurtenant" that is not in the statute but is added by the regulation.

**II.**    The Board usurped its statutory authority in yet another way—it reviewed the ALJ's factual findings *de novo*.    Under

25

§ 921(b)(3), the ALJ's "findings of fact in the decision under review …
*shall be conclusive* if supported by substantial evidence in the record
considered as a whole." 33 U.S.C. § 921(b)(3). The Board is
prohibited from serving as a second-tier trier of fact.

Instead of conducting its review within the appropriate limits,
the Board independently conducted an examination of the evidence,
substituted its determinations of fact for those of ALJ Romero, and
decided issues of witness credibility. First, ALJ Romero found that
Barr's work at the Concord mine was "likely far less than 14 years"
and that his work at the Concord preparation plant was about 2
years. The Board reversed both findings, citing a snippet of Barr's
testimony. But the cited testimony was ambiguous at best and
certainly not clear enough for the Board to overrule the ALJ's factual
findings. This is particularly true since Barr's testimony, as
construed by the Board, was undermined by other record evidence.
Evaluating competing evidence is the ALJ's responsibility—not the
Board's. Because Barr failed to carry his burden of showing fifteen
years of employment in an underground mine, ALJ Romero properly
denied his claim for benefits.

Second, both ALJs found that the Concord preparation plant was not appurtenant to the Oak Grove mine because they were separated by seven miles of undeveloped, forested land. Even accepting some broad definition of the word "appurtenant," the trier of fact was entitled to rely on the physical distance between the two sites and the lack of mining operations between them. The Board improperly substituted its own factual findings for those of the ALJs.

## ARGUMENT

### I. The Board erred in ruling that Barr established 15 years of employment "in one or more underground coal mines," as required to invoke the § 921(c)(4) presumption.

The Board ruled that Barr "was employed for fifteen years or more in one or more underground coal mines." 30 U.S.C. § 921(c)(4). But Barr *never* worked "in … underground coal mines" at all—he operated trains aboveground. And, for some of the time that the Board counted to get past the 15-year threshold, Barr worked aboveground at a preparation plant that was *seven miles away* from any underground mine. This Court should reverse.

### A. The standard of review

This Court reviews *de novo* issues of statutory construction. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2261

27

(2024). This Court had previously given *Chevron* deference to the Department of Labor's interpretations of the Act. *E.g.*, *Director, OWCP v. Drummond Coal Co.*, 831 F.2d 240, 245 (11th Cir. 1987) ("Ordinarily, the Department's construction of the statute involved must be accorded deference," citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). *Chevron* has been overruled. *See Loper Bright*, 114 S. Ct. 2261. Under *Loper Bright*, this Court "'shall decide all relevant questions of law'" and "'interpret constitutional and statutory provisions,'" without any special deference to the agency's view on such questions. *Id.* (internal citation omitted).

This Court also reviews *de novo* the Board's interpretation of agency regulations. "It is settled law that the Board is entitled to no deference from an appellate court with regard to the Board's reading of regulations." *William Brothers, Inc. v. Pate*, 833 F.2d 261, 264 (11th Cir. 1987). The agency's interpretation of its regulation cannot exceed the statutory mandate. *See id.*

28

**B.    The Black Lung Benefits Act: Key definitions and burden of proof**

The Act gives a relatively broad definition of "miner" in defining the intended beneficiaries of the Act.  The term "miner" includes an individual who worked "transportation *in or around* a coal mine, *to the extent* such individual was exposed to coal dust as a result of such employment."  30 U.S.C. § 902(d) (emphasis added) (Addendum 1); *see also William Brothers*, 833 F.2d at 266.

The Act, however, specifies a narrow subset of "miners" entitled to a special presumption of disability due to pneumoconiosis.  *See Energy West Mining Co. v. Lyle on behalf of Lyle*, 929 F.3d 1202, 1207 (10th Cir. 2019).  The statutory language states that if

> [A] miner was employed for fifteen years or more ***in one or more underground coal mines***, ... and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, ***then there shall be a rebuttable presumption*** that such miner is totally disabled due to pneumoconiosis ....

30 U.S.C. § 921(c)(4) (Addendum 4-5).  The presumption "reflect[ed]" the Surgeon General's testimony that pneumoconiosis became prevalent among miners with more than 15 years of "underground"

29

coal mine work but not less.[93]  It thus "giv[es] the benefit of the doubt" to this specific subgroup of miners.[94]

For miners employed "in a coal mine other than an underground mine," the statute imposes an additional burden to show substantially similar conditions:

> The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that *conditions* of a miner's employment in a *coal mine other than an underground mine* were *substantially similar to conditions in an underground mine.*

30 U.S.C. § 921(c)(4) (emphasis added) (Addendum 5).

Congress thus limited the special presumption to a subset of miner who had a high degree of coal dust exposure relative to other miners.  Under Section 921(c)(4), a miner is entitled to invoke the statutory presumption only (a) "if [the] miner was employed for fifteen years or more in one or more underground coal mines," or (b) if the

---

[93] *See* S. Rep. No. 92-743, 11-12, *reprinted in* 1972 U.S.C.C.A.N 2305, 2316-17 ("The fifteen year period … reflects the testimony of the Surgeon General in 1969, who stated: 'For work periods less than 15 years underground, the occurrence of pneumoconiosis among miners appears to be spotty and shows no particular trend.  For work periods greater than 15 years underground, there was a linear increase in the prevalence of the disease with years spent underground.").

[94] *See* S. Rep. No. 92-743, 11, *reprinted in* 1972 U.S.C.C.A.N 2305, 2315.

"conditions of [the] miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine."  30 U.S.C. § 921(c)(4).

In this case, the Board ruled that Barr had 15 years of employment "in one or more underground coal mines."  (A134-A138.)[95]  The Board expressly disclaimed reliance on the "substantially similar" exception to the statutory "requirement … that the miner work in an underground mine."  (A138.)[96]

The Act does not define the term "underground coal mine."  It defines "coal mine" to include areas where the coal is extracted and the land, structures, and facilities placed upon or above the surface of the mine:

> "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, *placed upon, under, or above the surface* of such land by any person used in, or to be used in, or resulting from, the work of extracting in such area [a variety of coal], and the work of preparing the coal so extracted, and includes the custom coal preparation facilities.

---

[95] Benefits Review Board Decision and Order at 10-14 (Jan. 27, 2021).

[96] Benefits Review Board Decision and Order at 14 n.18 (Jan. 27, 2021) (Appendix Tab F.)

30 U.S.C. § 802(h)(2) (emphasis added) (Addendum 7-8).[97]

The claimant (Barr) bears the initial burden of proof to establish that the presumption's prerequisites are satisfied. *See* 20 C.F.R. § 718.305(b)(1) (Addendum 12); *Energy West Mining Co.*, 929 F.3d at 1207. Only if the claimant carries that burden does the § 921(c)(4) presumption come into effect, shifting the burden to the employer to rebut the presumption. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1142 (9th Cir. 2021); *Brandywine Explosives & Supply v. Director*, 790 F.3d 657, 662 (6th Cir. 2015).

### D. Barr spent his entire employment operating trains aboveground and, for his Fairfield work, was seven miles away from an underground coal mine

The Board ruled that Barr's aboveground work *at* a facility that happened to have an underground mine is somehow sufficient to satisfy the statutory requirement of employment *in* an underground mine. (A134.) This was a clear error of law. In any event, the Board relied upon Barr's subsequent work at a preparation plant—located seven miles away from an underground coal mine—to get him past

---

[97] The definition of coal mine in 30 U.S.C. § 802 applies to all of Chapter 22, including the Black Lung Benefits Act, unless otherwise provided.

the 15-year threshold.  (A138.)  Under no conceivable logic is Barr's aboveground train work some seven miles *away* from the nearest underground mine employment "in" the underground mine.  The Google Earth image below identifies with yellow pins the Oak Grove underground mine (at the left), the Concord preparation plant (at the right), and the seven miles of undeveloped (forested) land in between.



Ex. 4-I (admitted at hearing before ALJ Romero).

    **a.**    **Statutory Text.**  "As in every statutory-interpretation case, we start with the text—and, if we find it clear, we end there as well."  *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022)

33

(quotation marks omitted); *Drummond Coal Co.*, 831 F.2d at 245 ("express statutory language is conclusive").

The Board ruled that Barr's employment "aboveground at an underground mine" counts for purposes of the 15-year presumption. (A134.)[98]  But the plain text of the Act requires that the miner be employed "*in*" an "underground mine," not merely "above ground *at* an underground mine."  *See* 30 U.S.C. § 921(c)(4).

"'In' is an ordinary, familiar English word, with a well understood meaning."  *United States v. Balde*, 943 F.3d 73, 81 (2d Cir. 2019).  The word "in" is a preposition "used to indicate inclusion within space, a place, or limits."  Webster's New Universal Unabridged Dictionary 717 (1994).  "[T]he word 'in,' as defined in the American and English Encyclopedia of law, … means inside of, within the bounds or limits of; [such] as 'in the house, in the city, in the county."  *Board of Chosen Freeholders of County of Hudson v. Central Railway Co. of New Jersey*, 59 A. 303, 307 (N.J. Ch. 1904); *accord General American Indemnity Co. v. Pepper*, 339 S.W.2d 660, 662 (Tex. 1960); *Home Ins. Co. v. Pett*, 143 So. 839, 841 (Ala. 1932).

---

[98] *See* Benefits Review Board Decision and Order at 10 (Jan. 27, 2021) (Appendix Tab F).

34

The Act defines "coal mine" to include structures "placed upon, under, or above the surface" of the land where the coal is being mined. An "underground coal mine" must be narrower than this definition. Otherwise, Congress would not have included the modifier "underground" in Section 921(c)(4). Underground means "situated, occurring, or operating *below* the surface of the earth." Am. College Heritage Dictionary (3d ed. 1997) (emphasis added); Oxford Eng. Dictionary ("beneath the surface of the ground") (2d ed. 1996).

As every speaker of the English language would agree, working "in … underground coal mines" means working *inside the underground mine*, not working aboveground at the same facility. *See also Heyman*, 31 F.4th at 1319 ("In interpreting written law, our duty is to 'determine the ordinary public meaning' of the provision at issue." (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020))). Indeed, the Board's own opinion makes clear that the statutory text does not fit, for the Board felt compelled to write merely that Barr worked "at" the mine, not "in" it. *See* 2021 Board Decision at 10; *see also Helen Mining Co. v. Elliott*, 859 F.3d 226, 232 n.7 (3d Cir. 2017) ("The § 921(c)(4) presumption applies only if the miner's

35

fifteen years of work *were performed underground.*" (emphasis added)).

If Congress had wanted to sweep in everyone who merely worked "at" or "around" an underground mine, regardless of whether they ever entered the mine, it could easily have done so. In fact, Congress *did* do so with the Act's definition of "miner." The term "miner" is defined to encompass "any individual who works or has worked *in or around a coal mine* or coal preparation facility in the extraction or preparation of coal" and expressly includes "an individual who works or has worked in … transportation *in or around a coal mine*, to the extent such individual was exposed to coal dust." 30 U.S.C. § 902(d) (emphases added). "[B]ecause Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another," the Court should "read the omission" of "or around" from § 921(c)(4) to mean that merely working "around" an underground mine is not enough to satisfy the presumption. *Santos v. Healthcare Revenue Recovery Group, LLC*, 90 F.4th 1144, 1153 (11th Cir. 2024) (citation omitted); *cf. DHS v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress's choice to say 'specifically prohibited by law' rather than 'specifically prohibited by

36

law, rule, or regulation' [as it said elsewhere in the same statute] suggests that Congress meant to exclude rules and regulations").

Congress's use of the term "or" in § 902(d)'s phrase "in or around a coal mine" further confirms that Congress (like everyone else) sees a difference between working "in" a mine and merely working "around" a mine. *See, e.g., Santos*, 90 F.4th at 1153. After all, "[t]he 'ordinary use' of 'or' 'is almost always disjunctive,' and '*the words it connects are to be given separate meanings.*'" *Id.* (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)) (emphasis added by *Santos*).

If Congress understood employment in transportation around a coal mine to be employment *in* the mine, then it would have had no reason to include the phrase "or around" in the definition of "miner." Reading "in" to include "or around" thus "violates the surplusage canon." *Savage Services Corp. v. United States*, 25 F.4th 925, 937 (11th Cir. 2022); *see National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007) ("we have cautioned against reading a text in a way that makes part of it redundant").

**b.** **Statutory Structure.** Though the Court could stop with the Act's clear language, the Act's structure further confirms that

37

working around an underground coal mine (i.e., aboveground at a facility that includes an underground mine) cannot satisfy § 921(c)(4)'s requirement of employment "in … underground coal mines."

The function of the § 921(c) presumptions is to effectuate § 921(a)'s directive that "[t]he Secretary shall … make payments of benefits in respect of total disability of any miner due to pneumoconiosis." 30 U.S.C. § 921(c). Section 921(c)(3), for instance, imposes an "*irrebuttable* presumption that [a miner] is totally disabled due to pneumoconiosis" if any of the specified diagnostic criteria is met. 30 U.S.C. § 921(c)(3) (emphasis added).

If a miner has "a totally disabling respiratory or pulmonary impairment" but does *not* qualify for § 921(c)(3)'s irrebuttable presumption, then he may still benefit from § 921(c)(4)'s "rebuttable presumption that such miner is totally disabled due to pneumoconiosis" *if* he "was employed for fifteen years or more in one or more underground coal mines." *Id.* § 921(c)(4). The obvious logic of the presumption is that a miner working "in … underground coal mines" is particularly likely to have substantial exposure to the airborne coal dust that causes pneumoconiosis. And if the miner

38

held such employment for at least 15 years, then it is reasonable to presume that his respiratory or pulmonary impairments result from pneumoconiosis even though the diagnostic criteria of § 921(c)(3) are not met. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 30 (1976) (citing Surgeon General's testimony at the Senate hearings that the 15-year point "marks the beginning of linear increase in the prevalence of the disease with years spent underground").

This logic does not carry over to individuals who merely work *at* facilities with underground mines but do not themselves work *in* those underground mines. It may be that everyone who works at a coal mining facility has a chance of being exposed to some coal dust. But that is true of *everyone* who might seek benefits under § 921, since those benefits are available to "miners" (*see* 30 U.S.C. § 921(a)), and that term is covers all those who worked in or around coal facilities and were exposed to coal dust as a result of such employment (*see id.* at § 902(d)). The point of § 921(c)(4) is to pick out a *subset* of miners who can be presumed to have had *particularly high exposure to coal dust relative to other miners*, justifying a presumption of disability due to pneumoconiosis even where the diagnostic criteria of § 921(c)(3) (which applies to any "miner") are not

39

met.  But reading § 921(c)(4) as the Board did, to encompass every "miner who worked above ground at an underground mine" (A134—2021 Board Dec. 10), makes § 921(c)(4) redundant with § 921(c)(3). *See Savage Services,* 25 F.4th at 937.  It also thwarts the statutory structure.  After all, if an individual works aboveground in, say, a transportation role, the fact that his facility includes an underground mine says nothing about his likely degree of exposure to coal dust. *Cf. Zurich American Insurance Group v. Duncan on behalf of Duncan*, 889 F.3d 293, 307 (6th Cir. 2018) (Kethledge, J., concurring) ("[I]n an underground mine, … dust is relatively hard to escape because the mine is not open-air the way an aboveground mine is.").

Additional confirmation comes from § 921(c)(4)'s comparability requirement.  Section 921(c)(4) provides that a miner employed in "a coal mine other than an underground mine" must establish conditions "substantially similar to an underground coal mine" in order to benefit from the presumption.  30 U.S.C. § 921(c)(4).  Section 921(c)(4) thus provides two paths for obtaining the presumption:  the miner must have worked for 15 years either *in* an underground coal mine *or* under "conditions … substantially similar to conditions in an underground mine"—that is, conditions that create a substantially

40

similar exposure to coal dust. The Board's ruling collapses the two different paths and renders this comparability requirement superfluous in this context.

The separate "substantially similar" rule would make no sense if aboveground employment at a facility that has an underground mine counted as employment "in" the mine. After all, a facility with an underground mine could include any role that an aboveground mining facility might have, including the train operation work that Barr performed. If all such roles counted as work in an underground mine, then the "substantially similar" rule would sweep in substantially similar roles at non-underground mines, and virtually everyone in the industry could invoke § 921(c)(4) by pointing to someone working in a substantially similar aboveground role at a facility with an underground mine. That would make nonsense of § 921's carefully constructed framework of presumptions.

**c.    Purpose.** For essentially the same reasons, construing the Act's requirement of employment "in" an underground mine as merely requiring employment "at" an underground mining facility (particularly an offsite facility) would be contrary to the clear purpose of § 921(c)(4). Section 921(c)(4) gives miners who worked under

41

conditions with especially high risk of substantial coal dust exposure—those who worked for at least 15 years in underground coal mines or in other coal mines with "conditions … substantially similar to conditions in an underground mine"—the benefit of a rebuttable presumption of disability due to pneumoconiosis, despite the absence of the diagnostic criteria in § 921(c)(3).

In other words, "Congress adopted [§ 921(c)(4)] to shift the costs of uncertainty about disease causation away from sick miners seeking benefits and onto their employers, *in cases where a miner's length of service makes it reasonable to assume a health impact from coal dust exposure.*"  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1141 (9th Cir. 2021) (quoting *W. Va. CWP Fund v. Director*, 880 F.3d 691, 699 (4th Cir. 2018) (emphasis added); *see also, e.g.*, *Director v. Midland Coal Co.*, 855 F.2d 509, 511 (7th Cir. 1988) ("Congress focused specifically on dust conditions in enacting the 'substantial similarity' provision.").

Section § 921(c)(4) should not be read as untethered to the conditions of actual work in an underground mine.  Such a reading thwarts that purpose by extending the presumption to countless other workers without regard for their actual conditions of

42

employment and coal dust exposure, simply because they happened to work at a facility with an underground mine or connected in some physical and economic way to an underground mine.

    **d.**   **Regulatory interpretation.**  The Department of Labor has not promulgated regulations interpreting § 921(c)(4) to sweep in aboveground workers at underground coal mines.  Nonetheless, the Board's decisions to that effect rely on DOL's regulatory definition of "underground coal mine."  *See, e.g.*, Benefits Review Board Decision and Order at 10 (Jan. 27, 2021) (A134); *Muncy v. Elkay Mining Co.*, 25 BLR 1-21, 2011 WL 6140705, at *4-6 (2011).  The DOL regulation defines "underground coal mine" as follows:

> Underground coal mine means a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining; including all land, structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, ***appurtenant*** thereto.

20 C.F.R. § 725.101(a)(30) (emphasis added) (Addendum 16).

    In this case, the Board glommed onto the word "appurtenant" in the DOL regulation and then swept in the Concord preparation plant located miles away from an underground coal mine.  (A135-

38.)[99]  To support its expansive reading of the regulation, the Board cites dictionary definitions of the word "appurtenant" and cases addressing that term in other statutory contexts.  (A136.)[100] (*e.g.*, quoting "Black's *Lung* Dictionary"—a typo).

But the word "appurtenant" does not appear *anywhere* in the statutory text.  *See* 30 U.S.C. § 921(c)(4).  If that word were given a narrow or commonsense meaning, it could be viewed as consistent with the statutory language.  A coal preparation facility is not naturally deemed "appurtenant" to a separate underground mining facility located miles away.  Instead, the Board read the words "appurtenant to" very broadly:  a direct physical and interdependent relationship between the sites is enough.  (A137.)[101]  The Board's interpretation explodes the scope of miners entitled to the 15-years presumption, sweeping in downstream facilities directly connected in some physical way to the undermine mine.  This case dealt with a

---

[99] *See* Benefits Review Board Decision and Order at 11-14 (Jan. 27, 2021) (Appendix Tab F).

[100] *See* Benefits Review Board Decision and Order at 12 (Jan. 27, 2021) (Appendix Tab F).

[101] Benefits Review Board Decision and Order at 13 (Jan. 27, 2021) (Appendix Tab F).

conveyor belt connection, but the Board's reasoning logically extends to roads, rail tracks, and fiber optic cables.

The Board relied heavily upon the D.C. Circuit's opinion in *Secretary of Labor v. National Cement Co. of California, Inc.*, 494 F.3d 1066 (D.C. Cir. 2011). But that case is not on point here. *National Cement* turned on the statutory definition of "coal or other mine" in the Mine Safety and Health Act ("Mine Act"). *See id.* at 1068. In the Mine Act, Congress defined "coal or other mine" to include "private ways or roads appurtenant to" the areas of land where the minerals are extracted. *See id.*, quoting 30 U.S.C. § 802(h)(1). The D.C. Circuit found the statutory words "private" and "appurtenant" to be ambiguous in that context and remanded the case to the agency to choose between the two competing meanings, pursuant to the now-overruled *Chevron* doctrine. *See id.* at 1075-77. If anything, *National Cement* undermines the Board's position here. It shows that Congress can define the terms broadly when it wants to capture areas beyond an underground coal mine.

The statutory language at issue here is very different. Congress expressly limited the statutory presumption to 15 years of employment *in* an *underground* mine. *See* 30 U.S.C. § 921(c)(4)

45

(Addendum 4-5). The Act defines "coal mine" to include structures "placed upon, under, or above the surface" of the land where the coal is being mined. See 30 U.S.C. § 802(h)(1) (Addendum 7-8). Section 921(c)(4) is addressing a specific subset of coal mines—an underground mine. *See* 30 U.S.C. § 921(c)(4). The word underground should be given its ordinary meaning. Even if the word "appurtenant" is ambiguous in the DOL regulation, the Board used the word "appurtenant" in the regulation to override the specific limitations in the statutory text. This is impermissible. An agency's construction of its regulation "must be reviewed in relation to the governing statutes." *Pacific Coast Med. Enters. v. Harris*, 633 F.2d 123, 131 (9th Cir. 1980). This Court interprets the statutory provisions *de novo*, without any special deference to the agency's view. *See Loper Bright*, 114 S. Ct. 2261.

In short, even assuming that rail workers employed in aboveground roles might theoretically be employed in an underground coal mine, the Board found that Barr had fourteen years hauling rail at the Concord underground mine. Barr could not reach 15 years of employment without also counting his time at the Concord preparation plant. (A137-A138.) The Board plainly erred in

46

ruling that Barr's rail employment at the Concord preparation plant counted as employment in an underground mine for purposes of § 921(c)(4). The Board's decision must be reversed.

e. **Supreme Court case law.** In *Usery v. Turner Elkhorn Mining Co.*, coal mine operators challenged the § 921(c)(4) presumption on due process grounds. 428 U.S. at 30-31. The Supreme Court rejected their challenge, holding that it was not arbitrary for Congress to enact a rebuttable presumption that an individual with a totally disabling respiratory or pulmonary impairment who was "employed for 15 years in underground mines" is disabled due to pneumoconiosis. *Id.* In so holding, the Supreme Court expressly relied on the presumption's requirement that the individual actually have worked underground in a coal mine: "Particularly in light of the Surgeon General's testimony at the Senate hearings on the 1969 Act to the effect that the 15-year point marks the beginning of linear increase in the prevalence of the disease with *years spent underground*, we think it clear that the durational basis of this presumption is … unassailable." *Id.* (emphasis added; footnote omitted).

47

The Supreme Court's authoritative interpretation of § 921(c)(4) confirms that the Board erred in reading § 921(c)(4) to apply to countless individuals who have never been underground at all. The Court interpreted the statutory text as being based on an individual's "years spent underground" and relied on that interpretation in rejecting the constitutional challenge.

**f.    The Tenth Circuit's *Sunnyside* decision**.    The Tenth Circuit recently held that a miner could count his work aboveground towards the 15-year requirement. *See Sunnyside Coal Co. v. Director, OWCP*, 112 F.4th 902, 910-13 (10th Cir. 2024). That decision is not binding here and is not of sufficient persuasive value to be followed. In any event, the Tenth Circuit's *Sunnyside* decision can be easily distinguished here.

In *Sunnyside*, the miner was employed by a single underground coal mine. *See id.* at 911. He worked ten years below ground and fourteen years aboveground. *See id.* The Tenth Circuit ruled that the miner's aboveground work counted toward the statutory presumption. *See id.* at 911-12. The Tenth Circuit's reasoning was two-fold. First, the miner "worked at a single mine throughout his employment; one mine did not become two simply because [the

miner] was above ground for part of his employment there." *Id.* at 911. Second, "[i]n this context, 'in' indicates [the miner's] position within the bounds of a coal mine," including the land and structures "'placed upon, under, or above the surface of'" of the coal mine. *See id.* at 912, quoting 30 U.S.C. § 802(h)(2).

The Tenth Circuit's reasoning is not persuasive. In finding that the statutory presumption includes work aboveground, the Tenth Circuit relied on Congress' broad definition of "mine" as including above ground structures. But § 921(c)(4)'s 15-year presumption is limited to a subset of mines—*underground* mines. Congress did not define "underground," so that word must be given its ordinary meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018). This Court should not follow *Sunnyside*.

Even if this Court does not want to create a conflict with the Tenth Circuit, *Sunnyside* is easily distinguishable. Barr worked as a rail engineer. Even if his work at the Concord mine qualifies under *Sunnyside*, the Board relied on Barr's separate employment for Fairfield at the Concord preparation plant to get him over the 15-year threshold. The Concord preparation plant was not "above the surface of" the underground coal mine (Oak Grove), much less within the

49

boundaries of the underground coal mine. *Cf. Sunnyside*, 112 F.4th at 912. It was seven miles away from the underground mine. Even under *Sunnyside*, Barr's work at a plant nowhere near an underground coal mine does not qualify.[102]

*        *        *

In short, Barr failed to show that he was "employed … in … underground coal mines" or under "conditions … substantially similar to conditions in an underground mine." This Court should reverse the Board's award of benefits to Barr's estate and his spouse.

## II. The Board exceeded its statutory authority and scope of review by reviewing the ALJs findings of fact *de novo*

The Board's decision cannot stand for an independent reason: The Board exceeded the scope of its statutory authority by reviewing the ALJ's findings of fact *de novo*. *See* 33 U.S.C. § 921(b)(3) (Addendum 9).

---

[102] Two other circuits had deferred to the Board's interpretation of § 921(c)(4) to include aboveground mine work. *See Sunnyside*, 112 F.4th at 912 n.6 (citing *Island Creek Kentucky Mining v. Ramage*, 737 F.3d 1050, 1058 (6th Cir. 2013); *Kanawha Coal Co. v. Director*, 539 F. App'x 215, 218 (4th Cir. 2013) (nonprecedential ruling)). Those decisions, however, relied on the now-overruled *Chevron* doctrine. *Id.*

**A.    The Board is required to accept the ALJ's factual findings when supported by substantial evidence**

This Court must ensure that the Board "adhere[d] to the statutory standard governing review of the [ALJ's] factual determinations." *King v. Dir., OWCP.*, 904 F.2d 17, 18 (9th Cir. 1990). The Board resolves administrative appeals from ALJs who hold evidentiary hearings with witnesses and other evidence presented. *See* 33 U.S.C. § 921(b)(3).[103]  "The Board's orders shall be based upon the hearing record.  The findings of fact in the decision under review by the Board *shall be conclusive* if supported by substantial evidence in the record considered as a whole."  33 U.S.C. § 921(b)(3) (emphasis added) (Addendum 9).

Given the statutory language, it is well-settled that only the ALJ may weigh the credibility and probative value of the evidence.  *See Island Creek Coal Co. v. Compton*, 211 F.3d 03, 211 (4th Cir. 2000). It is "[i]mmaterial that another factfinder might have reached a different result in a *de novo* hearing."  *Whitmore v. AFIA Worldwide Ins.*, 837 F.2d 513, 515 (D.C. Cir. 1988).  The Board's role in review

---

[103] Black lung claims are adjudicated by means of the procedures provided for in the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 919 and 921.

is deferential, meaning it may not reweigh the evidence. *See Director v. Rowe*, 710 F.2d 251, 254 (6th Cir. 1983).

The Board is not permitted to "disregard" an ALJ's findings of fact or "draw other inferences which it thinks may be more reasonable," even if the facts permit an alternative conclusion. *See Newport News Shipbuilding & Dry Dock Co. v. Loxley*, 934 F.2d 511, 514 (4th Cir. 1991); *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002) (quoting *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Only the ALJ has the authority to decide issues of credibility and to sort out conflicting evidence. *See Avondale Industries v. Director, OWCP*, 977 F.2d 186 (5th Cir. 1992). Consequently, the Board exceeds its scope of review if it "usurp[s] the fact-finding responsibility of the ALJ through its limited power of review." *Burs v. Director, Office of Workers' Compensation Program*, 41 F.3d 1555, 1561-62 (D.C. Cir. 1994) (citing *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991)).

## B. The ALJ's factual findings were supported by substantial evidence and thus should have been conclusive

Here, the Board failed to comply with the statutory standard governing its review in two respects.

52

First, ALJ Romero made specific findings regarding Barr's length of qualifying work.  (A95.)[104]  ALJ Romero indicated that Barr had two years (not three years) hauling from the Concord preparation plant.  (A75.)[105]  As he explained, Barr was employed by Fairfield in 1984 and started hauling at the Concord preparation plant.  Over the next three years, however, Barr had several significant absences from work including between August 11, 1984 and October 21, 1984, as well as July 31, 1986 and May 13, 1987.  (A75, A331.)[106]  In 1987, Barr stopped hauling from the Concord preparation plant altogether.  (A95.)[107]  Thus, while Barr was assigned to haul from the preparation plant between the years 1984 and 1987, his actual work time was two years.  The Board ignored ALJ's Romero's factual findings and

---

[104] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E); *see id.* 31.

[105] ALJ Romero Decision and Order Denying Benefits on Modification at 13 (Aug. 3, 2018) (Appendix Tab E).

[106] ALJ Romero Decision and Order Denying Benefits on Modification at 13 (Aug. 3, 2018) (Appendix Tab E); 2017 Hearing Tr. 38 (Appendix Tab O).

[107] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

gave Barr credit for "three years" of qualifying work at the Concord preparation plant. (A138-39.)[108] This was error.

In addition, ALJ Romero found that Barr's length of qualifying employment with U.S. Steel is "likely far less than 14 years." (A33.)[109] As ALJ Romero explained, the record shows that Barr's U.S. Steel work included hauling from the sites that were underground mines (Concord mine) as well as sites that were not operating coal mines. (A33.)[110] "[O]ut of the 14 years of employment with U.S. Steel," ALJ Romero explained, "there is no evidence in the record to establish the duration or length of [Barr's] time spent at the Concord mine ...." (A95.)[111]

In reversing, the Board cherry picked from Barr's testimony and then credited that testimony fully—contrary to the statutory limits on its review powers. According to the Board, Barr testified he loaded

---

[108] 2021 Board Decision at 13-14 (Appendix Tab F).

[109] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E); *see id.* 31.

[110] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

[111] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

coal at the Concord Mine site "one time in one shift ... for five days" per week.  (A133.)[112]  The Board relied upon the following exchange between the ALJ and Barr:

> JUDGE ODEGARD:  Okay.  Now, you talked about making the trip from Concord to the ---
>
> WITNESS [Barr]:  Yes, ma'am.
>
> JUDGE ODEGARD:   But I never quite understood, how many trips a day you would make?
>
> *  *  *
>
> JUDGE ODEGARD:   But **when** you worked one shift and **you went to the Concord** and picked up coal and took it to the plant, how many times would you do that in one shift, five times?
>
> WITNESS:   No, no, no.  I only did that one time in one shift, but I would do it for five days.

2013 Hearing Tr. 59 (Appendix Tab M); A221.

As the exchange above reflects, the ALJ asked a specific question about how many trips Barr would make to the Concord mine in a single shift, when he would go to that mine.  Barr's response ("but I would do it for five days") was confusing and non-responsive.  His answer was ambiguous enough that perhaps a trier

---

[112] 2021 Board Decision at 9 (Appendix Tab F.).

of fact—deciding the facts in the first instance—might be able to rely upon it.  But whatever Barr was trying to say in the testimony quoted above, it was not clear enough to give *the Board* authority to overrule the ALJ's factual finding.

Even if the cited testimony was clear, the Board erred by substituting its own view on how much weight Barr's testimony should receive.  Both ALJs discounted Barr's testimony in significant respects.  Barr testified under oath that he worked for U.S. Steel for a total of "eighteen years," not counting his time working for Fairfield.  (A184, 190.)[113]  But Barr's personnel records reveal significant periods of time when he was either not working at all or was not hauling coal from an underground mine.  For example, from November 1965 to September 1967, Barr was not working because he had been arrested, convicted of a crime, and was serving his jail sentence.  (A91.)[114]  ALJ Romero pointed to other periods of time when Barr was not working due to layoffs.  (A91.)[115]  Thus, ALJ

---

[113] 2013 Hearing Tr. 22, 28 (Appendix Tab M).

[114] ALJ Romero Decision and Order Denying Benefits on Modification at 29 (Aug. 3, 2018) (Appendix Tab E).

[115] ALJ Romero Decision and Order Denying Benefits on Modification at 29 (Aug. 3, 2018) (Appendix Tab E).

Romero was properly skeptical of Barr's testimony on the length of his qualifying employment. The Board had no basis to substitute its own credibility findings for the ALJs.

The Board recognized, as the ALJ found, that Barr hauled from sites that were not operating underground mines. (A133.)[116] But the Board speculated that Barr could have hauled from both the Concord mines and non-coal mines in the same 8-hour shift. (A133.)[117] Conjecture is not a basis for overruling the trier of fact. And the Board's finding is inconsistent with Barr's own testimony. Barr testified that the Concord mine job was an 8-hour shift. (A221.)[118] Thus, on days when Barr was assigned to the Concord mine, he only had time during that working day to handle the Concord hauling. He did not haul from Concord and from other sites in the same day. And, since the record is clear that Barr did other jobs besides the Concord runs, it necessarily follows that he did not go to Concord every day.

---

[116] 2021 Board Decision at 9 (Appendix Tab F).

[117] 2021 Board Decision at 9 (Appendix Tab F)

[118] 2013 Hearing Tr. 59:7-22 (Appendix Tab M).

In a footnote, the Board stated that one of the other sites that Barr hauled from—Edgewater—was an operating coal mine at the time Barr was working for U.S. Steel.  (A133.)[119]  But there is no evidentiary support for this statement, and Barr himself did not press this argument in briefing to the Board.  Barr vaguely testified only that he "picked up … to 20 loads each" at Edgewater.  (A199.)[120]  This reflects only that Edgewater was a dumping site.  Barr never testified that it was an operating coal mine when he worked at U.S. Steel.[121]

Both ALJs observed that Barr's evidence regarding how many days he hauled from the Concord mine was "skimpy, at best." (A95.)[122]  In the first ALJ hearing, Barr testified that not all of his U.S.

---

[119] *See* Board Decision at 9 n.15 (Appendix Tab F).

[120] 2013 Hearing Tr. 37 (Appendix Tab M).

[121] In fact, Edgewater was closed as an operating coal mine in 1962—years before Barr started working for U.S. Steel.  *See* https://www.bhamwiki.com/w/Edgewater ("The workforce at the Edgewater mine was reduced greatly by 1933.  The mine was finally closed in 1962."); *see also* Library of Congress:  Edgewater-TCI Coal Mine at 3-4 (explaining that Edgewater coal mine operated from 1910 to 1962).

[122] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

Steel time was hauling from the Concord mine. (A93.)[123] Barr's personnel file—introduced in the second ALJ hearing—demonstrated that he was involved in several work incidents but none were at the Concord mine site. (A95.)[124] For example, in April 1976 and April 1980, Barr was involved in an incident while hauling non-coal products. (A94.)[125] And the record was "devoid of any evidence" showing Barr's work at the non-Concord mine sites was substantially similar to conditions in an underground mine. (A95.)[126] In light of the additional evidence, ALJ Romero could not "presume[]," as ALJ Odegard had, that Barr's total time at U.S. Steel was qualifying coal mine employment. (A95.)[127] ALJ Romero's findings are supported by substantial evidence in the record as a whole.

---

[123] ALJ Romero Decision and Order Denying Benefits on Modification at 31 (Aug. 3, 2018) (Appendix Tab E).

[124] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

[125] ALJ Romero Decision and Order Denying Benefits on Modification at 32 (Aug. 3, 2018) (Appendix Tab E).

[126] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

[127] ALJ Romero Decision and Order Denying Benefits on Modification at 33 (Aug. 3, 2018) (Appendix Tab E).

First, the Board recognized that its interpretation of the "appurtenant" language in the DOL regulation required factual predicates. (A137).[128] Under the Board's interpretation, the term requires a relationship between the two sites that is part physical and part economic. (A137).[129]

Even if the Board's interpretation of the word "appurtenant" is accepted here, the trier of fact was entitled to rely upon the physical distance between the two sites and the lack of any mining operations between them. As the ALJs explained, the Concord preparation plant is not an underground mine and "is not even near the [mine] site." (A57, A97.)[130] The sites are connected by two conveyor belts, but the land between them is "not devoted to mining operations but rather consists of [seven miles of] undeveloped (forested) lands." (A57,

---

[128] Benefits Review Board Decision and Order at 13 (Jan. 27, 2021) (Appendix Tab F).

[129] Benefits Review Board Decision and Order at 13 (Jan. 27, 2021) (Appendix Tab F).

[130] ALJ Odegard Decision and Order on Reconsideration at 5 (Oct. 3, 2014) (Appendix Tab D); ALJ Romero Decision and Order Denying Benefits on Modification at 35 (Aug. 3, 2018) (Appendix Tab E).

A97.)[131]    The Board recognized that "appurtenant" includes a physical relationship between the sites, and the ALJs found that the physical relationship was far too attenuated in these circumstances.

The Board brushed these factual findings aside and emphasized commonality of ownership instead.  According to the Board, U.S. Steel owned and operated the two facilities, and "[t]here is no suggestion that anyone [else] … had access to the convey belt attaching them." (A137.)[132]  The Board's findings were not supported by specific evidence but instead by its own assertions that no one had made any contrary suggestions.  In other words, the Board adopted a new "test" for the first time on appeal and then ruled that no one had challenged the predicate facts for its application here.  This was improper at several levels.  The Board adopted a new test on appeal without allowing the parties to submit evidence regarding its application.  And the Board substituted its own ownership findings as conclusive over the ALJs findings.  The ALJs were entitled

---

[131] ALJ Odegard Decision and Order on Reconsideration at 5 (Oct. 3, 2014) (Appendix Tab D); ALJ Romero Decision and Order Denying Benefits on Modification at 35 (Aug. 3, 2018) (Appendix Tab E).

[132] Benefits Review Board Decision and Order at 13 (Jan. 27, 2021) (Appendix Tab F).

to entitled to rely on the physical distance between the sites in finding the preparation plant was not appurtenant to the underground coal mine.

Finally, the Board indicates that, if reversed for counting Barr's work at the Concord preparation plant, the Board would remand the case back to the ALJ to "reconsider" whether Barr established that the preparation plant conditions were "substantially similar" to an underground mine. (A138.)[133] Here, too, the Board failed to comply with the statutory review standard. The ALJ's findings are supported by substantial evidence in the record as a whole—including that the coal at that point was wet "almost like mud" (A243, A246), dust levels were "extremely low" (A24-25, A272-74), a worker was fine by simply washing hands (A251), and that Barr and other employees did not request to seek access to bath houses and request comfort respirators (A385-86, A391.) There is no basis for any remand to an ALJ.

In short, the Board engaged in an impermissible independent review of the evidence. ALJ's Romero's factual findings were

---

[133] 2021 Board Decision at 14 (Appendix Tab F).

supported by substantial evidence in the record as a whole.  As a result, his factual findings should have been treated as conclusive.

### CONCLUSION

The Court should grant the petition for review, reverse the Board decisions under review, and reinstate ALJ Romero's August 2018 denial of Barr's request for modification.

Respectfully submitted,

 /s/   Alice E. Loughran

Kary B. Wolfe
Jones Walker
420 20th St. N
Birmingham, AL 35203
(205) 244-5281
kwolfe@joneswalker.com

Alice E. Loughran
Mark C. Savignac
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6202
(202) 429-3902 (fax)
aloughran@steptoe.com
msavignac@steptoe.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit of FRAP 32 because, excluding the parts of the document exempted by FRAP 32(f) and, this document contains 12,301 words.

I further certify that this document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).  It has been prepared in proportionally spaced, 14-point Bookman Old Style typeface using Microsoft Word.

Dated: October 23, 2024

/s/  Alice E. Loughran
          Alice E. Loughran
          Steptoe LLP
          (202) 429-6202

## Statutory Addendum

## Table of Contents

### *Sections of the U.S. Code*

30 U.S.C. § 902 .......................................................................1

30 U.S.C. § 921 .......................................................................3

30 U.S.C. § 802(h)...................................................................7

33 U.S.C. § 921 .......................................................................9

### *Sections of the Code of Federal Regulations*

20 C.F.R. § 718.305 ...............................................................12

20 C.F.R. § 725.101 ...............................................................15

# 30 U.S.C. § 902

## § 902.  Definitions

For purposes of this subchapter—

\* \* \*

(b) The term "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.

(c) The term "Secretary", except where expressly otherwise provided, means the Secretary of Labor.

(d) The term "miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal.  Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

(f)(1) The term "total disability" has the meaning given it by regulations of the Secretary of Health and Human Services, which were in effect on November 2, 2002, for claims under part B of this subchapter, and by regulations of the Secretary of Labor for claims under part C of this subchapter, subject to the relevant provisions of subsections (b) and (d) of section 923 of this title, except that—

> (A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time;

1

(B) such regulations shall provide that (i) a deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled; and (ii) in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled;

(C) such regulations shall not provide more restrictive criteria than those applicable under section 423(d) of Title 42; and

(D) the Secretary of Labor, in consultation with the Director of the National Institute for Occupational Safety and Health, shall establish criteria for all appropriate medical tests under this subsection which accurately reflect total disability in coal miners as defined in subparagraph (A).

\* \* \*

**CREDIT(S)**
(Pub.L. 91-173, Title IV, § 402, Dec. 30, 1969, 83 Stat. 792; Pub.L. 92-303, §§ 1(c)(2) to (4), 3(b), 4(a), May 19, 1972, 86 Stat. 151-153; Pub.L. 95-239, § 2, Mar. 1, 1978, 92 Stat. 95; Pub.L. 96-88, Title V, § 509(b), Oct. 17, 1979, 93 Stat. 695; Pub.L. 97-119, Title I, § 104(b)(1), Title II, § 205(b), Dec. 29, 1981, 95 Stat. 1639, 1645; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 103-296, Title I, § 108(i)(1), Aug. 15, 1994, 108 Stat. 1488; Pub.L. 107-275, § 2(b)(1), Nov. 2, 2002, 116 Stat. 1925.)

2

# 30 U.S.C. § 921

## § 921.  Regulations and presumptions

(a) Promulgation; payment of benefits

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

(b) Promulgation of standards determining total disability

The Secretary shall by regulation prescribe standards for determining for purposes of subsection (a) whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis. Regulations required by this subsection shall be promulgated and published in the Federal Register at the earliest practicable date after December 30, 1969, and in no event later than the end of the third month following December 1969. Final regulations required for implementation of any amendments to this subchapter shall be promulgated and published in the Federal Register at the earliest practicable date after the date of enactment of such amendments, and in no event later than the end of the fourth month following the month in which such amendments are enacted. Such regulations may be modified or additional regulations promulgated from time to time thereafter.

(c) Presumptions.  For purposes of this section—

(1) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

(2) If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.1 as the case may be.

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with

4

such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death is due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(5) In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180

5

days after the effective date of the Black Lung Benefits Amendments of 1981.

(d) Applicability of presumptions

Nothing in subsection (c) shall be deemed to affect the applicability of subsection (a) in the case of a claim where the presumptions provided for therein are inapplicable.

**CREDIT(S)**

(Pub.L. 91-173, Title IV, § 411, Dec. 30, 1969, 83 Stat. 793; Pub.L. 92-303, §§ 3(a), 4(b)(1), (3), (c), (d), May 19, 1972, 86 Stat. 153, 154; Pub.L. 95-239, § 3(a), Mar. 1, 1978, 92 Stat. 96; Pub.L. 97-119, Title II, §§ 202(b), 203(a)(5), Dec. 29, 1981, 95 Stat. 1643, 1644; Pub.L. 103-296, Title I, § 108(i)(2), Aug. 15, 1994, 108 Stat. 1488; Pub.L. 107-275, § 2(a), Nov. 2, 2002, 116 Stat. 1925; Pub.L. 111-148, Title I, § 1556(a), Mar. 23, 2010, 124 Stat. 260.)

## 30 U.S.C. § 802(h)

## § 802.  Definitions

## For the purpose of this chapter, the term—

* * *

(h)(1) "coal or other mine" means (A) an area of land from which minerals are extracted in nonliquid form or, if in liquid form, are extracted with workers underground, (B) private ways and roads appurtenant to such area, and (C) lands, excavations, underground passageways, shafts, slopes, tunnels and workings, structures, facilities, equipment, machines, tools, or other property including impoundments, retention dams, and tailings ponds, on the surface or underground, used in, or to be used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, or to be used in, the milling of such minerals, or the work of preparing coal or other minerals, and includes custom coal preparation facilities. In making a determination of what constitutes mineral milling for purposes of this chapter, the Secretary shall give due consideration to the convenience of administration resulting from the delegation to one Assistant Secretary of all authority with respect to the health and safety of miners employed at one physical establishment;

(2) For purposes of subchapters II, III, and IV, "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal

7

so extracted, and includes custom coal preparation facilities;

**CREDIT(S)**

(Pub.L. 91-173, § 3, Dec. 30, 1969, 83 Stat. 743; Pub.L. 95-164, Title I, § 102(b), Nov. 9, 1977, 91 Stat. 1290.)

## 33 U.S.C. § 921

### § 921.  Review of compensation orders

\* \* \*

(b)  Benefits Review Board; establishment; members; chairman; quorum; voting; questions reviewable; record; conclusiveness of findings; stay of payments; remand

(1) There is hereby established a Benefits Review Board which shall be composed of five members appointed by the Secretary from among individuals who are especially qualified to serve on such Board. The Secretary shall designate one of the members of the Board to serve as chairman. The Chairman shall have the authority, as delegated by the Secretary, to exercise all administrative functions necessary to operate the Board.

(2) For the purpose of carrying out its functions under this chapter, three members of the Board shall constitute a quorum and official action can be taken only on the affirmative vote of at least three members.

(3) The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay

9

shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.

(4) The Board may, on its own motion or at the request of the Secretary, remand a case to the administrative law judge for further appropriate action. The consent of the parties in interest shall not be a prerequisite to a remand by the Board.

(5) Notwithstanding paragraphs (1) through (4), upon application of the Chairman of the Board, the Secretary may designate up to four Department of Labor administrative law judges to serve on the Board temporarily, for not more than one year. The Board is authorized to delegate to panels of three members any or all of the powers which the Board may exercise. Each such panel shall have no more than one temporary member. Two members shall constitute a quorum of a panel. Official adjudicative action may be taken only on the affirmative vote of at least two members of a panel. Any party aggrieved by a decision of a panel of the Board may, within thirty days after the date of entry of the decision, petition the entire permanent Board for review of the panel's decision. Upon affirmative vote of the majority of the permanent members of the Board, the petition shall be granted. The Board shall amend its Rules of Practice to conform with this paragraph. Temporary members, while serving as members of the Board, shall be compensated at the same rate of compensation as regular members.

(c) Court of appeals; jurisdiction; persons entitled to review; petition; record; determination and enforcement; service of process; stay of payments

Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in

which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified. The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the court. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier. The order of the court allowing any stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that irreparable damage would result to the employer, and specifying the nature of the damage.

**CREDIT(S)**

(Mar. 4, 1927, c. 509, § 21, 44 Stat. 1436; June 25, 1936, c. 804, 49 Stat. 1921; June 25, 1948, c. 646, § 32(b), 62 Stat. 991; May 24, 1949, c. 139, § 127, 63 Stat. 107; Pub.L. 92-576, § 15(a), (b), Oct. 27, 1972, 86 Stat. 1261, 1262; Pub.L. 95-251, § 2(a)(10), Mar. 27, 1978, 92 Stat. 183; Pub.L. 98-426, § 15, Sept. 28, 1984, 98 Stat. 1649.)

## 20 C.F.R. § 718.305

### § 718.305  Presumption of pneumoconiosis.

(a) Applicability. This section applies to all claims filed after January 1, 2005, and pending on or after March 23, 2010.

(b) Invocation.

(1) The claimant may invoke the presumption by establishing that—

(i) The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

(ii) The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

(iii) The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

(2) The conditions in a mine other than an underground mine will be considered "substantially similar" to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there.

(3) In a claim involving a living miner, a miner's affidavit or testimony, or a spouse's affidavit or testimony, may not be used by itself to establish the

12

existence of a totally disabling respiratory or pulmonary impairment.

(4) In the case of a deceased miner, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition must be considered sufficient to establish total disability due to a respiratory or pulmonary impairment if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination must not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(c) Facts presumed. Once invoked, there will be rebuttable presumption—

(1) In a miner's claim, that the miner is totally disabled due to pneumoconiosis, or was totally disabled due to pneumoconiosis at the time of death; or

(2) In a survivor's claim, that the miner's death was due to pneumoconiosis.

(d) Rebuttal—

(1) Miner's claim. In a claim filed by a miner, the party opposing entitlement may rebut the presumption by—

* * *

**Credits:**

[78 FR 59114, Sept. 25, 2013]
SOURCE: 45 FR 13678, Feb. 29, 1980; 55 FR 28606, July 12, 1990; 65 FR 80045, Dec. 20, 2000; 65 FR 80050, Dec. 20, 2000; 75 FR 63380, Oct. 15, 2010; 78 FR 35554, June 13, 2013; 78 FR 59114, Sept. 25, 2013; 79 FR 21611, April 17, 2014, unless otherwise noted.

13

AUTHORITY: 5 U.S.C. 301; Reorganization Plan No. 6 of 1950, 15 FR 3174; 30 U.S.C. 901 et seq., 902(f), 934, 936; 33 U.S.C. 901 et seq.; 42 U.S.C. 405; Secretary's Order 10–2009, 74 FR 58834.

## 20 C.F.R. § 725.101(a)(30)

### § 725.101. Definition and use of terms.

(a) Definitions. For purposes of this subchapter, except where the content clearly indicates otherwise, the following definitions apply:

\* \* \*

(12) Coal mine means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, placed upon, under or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite or anthracite from its natural deposits in the earth by any means or method, and in the work of preparing the coal so extracted, and includes custom coal preparation facilities.

(13) Coal preparation means the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing and loading of bituminous coal, lignite or anthracite, and such other work of preparing coal as is usually done by the operator of a coal mine.

\* \* \*

(19) Miner or coal miner means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. The term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal mine dust as a result of such employment (see § 725.202). For

15

purposes of this definition, the term does not include coke oven workers.

* * *

(30) Underground coal mine means a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining; including all land, structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, appurtenant thereto.

* * *

(b) Statutory terms. The definitions contained in this section must not be construed in derogation of terms of the Act.

(c) Dependents and survivors. Dependents and survivors are those persons described in subpart B of this part.

**Credits**

[77 FR 37286, June 21, 2012; 78 FR 59117, Sept. 25, 2013]

SOURCE: 65 FR 80054, Dec. 20, 2000; 75 FR 63380, Oct. 15, 2010; 77 FR 37286, June 21, 2012; 78 FR 35558, June 13, 2013; 79 FR 21615, April 17, 2014; 81 FR 43449, July 1, 2016, unless otherwise noted.

AUTHORITY: 5 U.S.C. 301; 28 U.S.C. 2461 note (Federal Civil Penalties Inflation Adjustment Act of 1990); Pub.L. 114–74 at sec. 701; Reorganization Plan No. 6 of 1950, 15 FR 3174; 30 U.S.C. 901 et seq., 902(f), 921, 932, 936; 33 U.S.C. 901 et seq.; 42 U.S.C. 405; Secretary's Order 10–2009, 74 FR 58834.

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2024, the foregoing brief was filed electronically with the Clerk of Court through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

/s/ Alice E. Loughran
Alice E. Loughran
Steptoe LLP
(202) 429-6202

65