Appeal Case No.: 24-10651

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

FAIRFIELD SOUTHERN COMPANY,

Petitioner,

v.

DIRECTOR, OWCP, et al,

Respondent.

---

ON APPEAL FROM THE U.S. DEPARTMENT OF LABOR
Benefits Review Board
Agency Docket Nos. 23-1080 BLA and 23-0181 BLA

---

## RESPONSE TO BRIEF OF PETITIONER BY CLAIMANT, EARLENE BARR O/B/O AND AS WIDOW OF BILLIE BARR

John R. Jacobs, Esq.
J. Thomas Walker, Esq.
Maples, Tucker & Jacobs, LLC
2001 Park Place N., Ste. 1325
Birmingham, Alabama 35203
Phone: (205) 322-2333
jack@mtandj.com
tom@mtandj.com
Counsel for the Claimant

## CORPORATE DISCLOSURE STATEMENT

Counsel for Earlene Barr o/b/o and as the widow of Billie Barr ("Claimant") hereby discloses any corporate affiliations of Claimant and certifies that the following judges, attorneys, persons, association of persons, firms, partnerships, and corporations have an interest in the outcome of the above-styled cause:

### A.     Corporate Disclosure Statement

None.

### B.     Certificate of Interested Parties

Almond, M. Brent, Counsel for Petitioner, Huie, Fernambucq & Stewart, LLP

Barr, Earlene A., Claimant and o/b/o Billie B. Barr, deceased

Birmingham Southern Railroad Company, Parent of Petitioner

Boucher, Lauren C., Administrative Law Judge, U.S. Dept. of Labor

Buzzard, Greg J., Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Chance, Michael, Director, OWCP, U.S. Dept. of Labor

Fairfield Southern Company, Inc., Petitioner

FTAI Infrastructure Inc. (FIP), Parent of Transtar, LLC

Gresh, Daniel T., Chief Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Huie, Fernambucq & Stewart, LLP

Jacobs, John R., Counsel for Claimant, Maples Tucker & Jacobs LLC

Jones Walker LLP

Jones, Melissa Lin, Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Joyner, Barry H., Associate Solicitor for Black Lung and Longshore Legal Services, U.S. Dept. of Labor

Kim, Kathleen H., Attorney, U.S. Dept. of Labor

Loughran, Alice E., Counsel for Petitioner, Steptoe LLP

Maples Tucker & Jacobs LLC

Nanda, Seema, Solicitor of Labor, U.S. Dept. of Labor

Odegard, Adele H., Administrative Law Judge, U.S. Dept. of Labor

Rolfe, Jonathan, Administrative Appeals Judge, Benefits Review Board, U.S. Dept. of Labor

Romero, Jr., Lee J., Administrative Law Judge, U.S. Dept. of Labor

Savignac, Mark, Counsel for Petitioner, Steptoe LLP

Shepherd, Jr., Thomas O., Clerk of the Appellate Boards, U.S. Dept. of Labor

Steptoe LLP

Su, Julie, Acting Secretary of Labor, U.S. Dept. of Labor

Transtar, LLC, Parent of Petitioner

Walker, J. Thomas, Counsel for Claimant, Maples Tucker & Jacobs LLC

## STATEMENT REGARDING ORAL ARGUMENT

Claimant does not request oral argument and feels that these issues can adequately be presented, argued, and decided based upon the briefs of the parties.

TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT……………………………….……ii

STATEMENT REGARDING ORAL ARGUMENT……………………….…..iv

TABLE OF CONTENTS………………………………………………………...v

TABLE OF AUTHORITIES...…………………………………………...………..vi

STATEMENT OF JURISDICTION…………………………………………..1

STATE OF THE ISSUES…………………………………………………..2

STATEMENT OF THE CASE…………………………………………………..3

SUMMARY OF THE ARGUMENT……………………………………………5

ARGUMENT………………………………………………………………….6

CONCLUSION……………………………………………………….…..19

CERTIFICATE OF COMPLIANCE……………………………………...….20

CERTIFICATE OF SERVICE…………………………………...……….……21

# TABLE OF AUTHORITIES

CASE LAW:

<u>Federal Cases</u>:

*Baker v. US. Steel Corp.,*
 867 F.2d 1297, 1299 (11th Cir. 1989)………………..………..12,14,15,16

*Brown v. Director, Office of Workers' Compensation Programs,*
 No. 87-7358, slip opinion at 4309, 4312 (11th Cir. August 15, 1988)…12

*Bush & Burchett, Inc. v. Reich*,
 117 F.3d 932 (6th Cir. 1997)…………………………………….…13

*Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.,*
 598 F.2d 945 (5th Cir.1979)………………………………………12

*Foreman v. Director, Office of Workers' Compensation Programs*,
 794 F.2d 569 (11th Cir.1986)………………………………………...6

*O'Keefe v. Smith, Hinchman & Grylls Associates, Inc.,*
 380 U.S. 359 (1965)……………………………………….…17

*OWCP v. Ziegler Coal Co.*,
 853 F.2d 529, 535 (7th Cir. 1988)……………………………...15

*OWCP v. Consolidation Coal Company*
 884 F.2d 926 (16th Cir. 1989)………………………...………..15,16

*Stomps v. Director, Office of Workers' Compensation Programs*,
 816 F.2d 1533 (11th Cir.1987)……………...………………………...6

*Sunnyside Coal Co. v. Dir., Office of Workers Comp. Programs*,
 23-9517 (10th Cir. Aug 13, 2024)………………………...……………10,12,13

*Tug Allie– B, Inc. v. United States*,
 273 F.3d 936 (11th Cir.2001)…………………………………………..1

*United States v. Cunningham*,
   607 F.3d 1264 (11th Cir.2010) (*per curiam*)…………………….….…......1

*U.S. Steel Mining Co. v. Director*,
   719 F.3d 1275 (11th Cir. 2013)……………………………………………1

<u>Benefits Review Board</u>:

*Muncy v. Elkay Mining Co.*,
   BRB No. 11-0187…………….………...........................................................7

*Shupe v. Director, OWCP*,
   12 BLR 1-200, 1-202 (1989) (en banc)…………………………...………6

<u>Statutes</u>:

30 U.S.C. § 802……………………………………………………...……8,9

30 U.S.C. § 802(h)(2)……………………………………...……..……11,12

30 U.S.C. § 802(i)……………………………………………………......13

30 U.S.C. §§ 901-944 (2012)……………………………………………6

30 U.S.C. §921(c)(4),
   amended by Pub. L. No. 111-148, §1556(a),
   124 Stat. 119 (2010) (to be codified at 30 U.S.C. §921(c)(4))…………7,9,10

30 U.S.C. § 932(a)……………………………………….……..….1,6,17

33 U.S.C. §921(b)…………………………………………………….…1

33 U.S.C. Sec. 921(b)(3)…………………………………….……..6,17

33 U.S.C. § 921(c)……………………………………………...…..1,6

<u>Other Authorities</u>:

20 C.F.R. § 718.204……………………………………………………………..8

20 C.F.R. § 718.305(b)(1)…………………………………………………….7

20 CFR § 725.101(a)(12), (30)……………………………………….……..9

20 C.F.R. §725.101(a)(32)……………………………………………..…17

20 C.F.R. Sec. 802.301 (1985)………………………………………….…..6

# STATEMENT OF JURISDICTION

Jurisdiction of the United States Court of Appeals for the Eleventh Circuit is based on the situs of the former coal miner's last coal mining dust exposure. Here, Claimant, was last exposed to coal mine dust in Alabama while working for Fairfield Southern Company. ("Employer or Petitioner"). Jurisdiction of this Court is based on the Longshoremen's Act, 33 U.S.C. § 921(c), incorporated into the Black Lung Benefits Act ("the Act") at 30 U.S.C. § 932(a). The Benefits Review Board had jurisdiction under 33 U.S.C. §921(b), to hear Petitioner's appeal of the award of benefits. Petitioner appeals following the Benefits Review Board's final order that disposed of all issues and claims before the U.S. Department of Labor. Thus, this appeal is proper before this Court. Furthermore, the Employer contends that the BRB and ALJ have misinterpreted the Act. The Eleventh Circuit has held that it reviews *de novo* questions of statutory interpretation. *Tug Allie– B, Inc. v. United States*, 273 F.3d 936, 941 (11th Cir.2001). It also reviews *de novo* constitutional challenges to statutes. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir.2010) (*per curiam*). *U.S. Steel Mining Co. v. Director*, 719 F.3d 1275 (11th Cir. 2013)

# STATEMENT OF THE ISSUES

A.   The Board did not err in ruling that Barr was employed for fifteen years or more in one or more underground mines within the meaning of the Act and the Regulations.

B.   The Board did not exceed its authority in overturning ALJ Romero's Denial of Benefits

# I. STATEMENT OF THE CASE

This is a subsequent claim for the Claimant. He first filed a claim on August 8, 1994 which was administratively denied on January 31, 1995. A second claim was filed on October 4, 2001. That claim was denied by the District Director on May 17, 2002. The current claim was filed on June 20, 2011 (Director's Exhibit is indicated as "DX"4) and approved by the District Director on April 30, 2012. (DX27) In addition, the District Director made a finding that Fairfield Southern Co. was the Responsible Operator. (DX27) The Employer subsequently appealed this claim to the Office of Administrative Law Judges on May 24, 2012. (DX28) A hearing was held before Administrative Law Judge Adele Odegard on January 30, 2013. On August 15, 2014, ALJ Odegard entered her Decision and Order Denying Benefits. (DX73 and A8) On September 2, 2014, Claimant filed his motion to reconsider the Decision and Order. (DX74) Fairfield Southern Co. filed its response to the Claimant's motion to reconsider and its cross motion to reconsider the Decision and Order on September 18, 2014. (DX75) Claimant filed his response to Fairfield Southern's motion to reconsider on September 29, 2014. (DX76) ALJ Odegard issued her Decision and Order on Reconsideration on October 3, 2014. (DX77 and A53) Claimant filed his Petition to Modify ALJ Odegard's Decision and Orders on December 9, 2014. (DX78, 79 and 80) On March 11, 2015, Fairfield Southern filed its Petition for Modification. (DX84) On September 28, 2015, the

District Director issued its Proposed Decision and Order denying Claimant's Request for Modification. (DX96) Claimant subsequently filed his second request for a modification on April 22, 2016. (DX97) On September 12, 2016, the District Director issued its Proposed Decision and Order denying Claimant's Request for Modification. (DX103) Claimant appealed this denial to the Office of Administrative Law Judges on September 20, 2016. (DX105) The Honorable Lee J. Romero, Jr. held a hearing on this matter on October 25, 2017. On August 3. 2018, Judge Romero entered his Decision and Order Denying Benefits on Modification. (A68) Claimant appealed and the Benefits Review Board issued its Decision and Order affirming, in part, reversing, in part, and remanding the case for further consideration on January 27, 2021. (A124) The Employer filed a motion for reconsideration, which was denied on November 7, 2022. (A141) On January 30, 2023, ALJ Lauren Boucher entered her Decision and Order Awarding Benefits. (A544) Employer appealed. The Benefits Review Board issued its Decision and Order affirming the award of benefits on January 18, 2024. (A144) Employer appealed to this Court.

## II.   SUMMARY OF THE ARGUMENT

Petitioner argues that the Benefits Review Board and ALJ Boucher misinterpreted the Act by finding the Claimant had 15 qualifying years of coal mine employment in one or more underground mines.  Specifically, Petitioner contends that the 15-year presumption only is applicable to miners who worked "in" an underground mine, not aboveground at a coal mine.  Furthermore, Petitioner cites Congressional intent differentiating between the proof of underground mining versus employment in a mine other than an underground mine requiring proof of conditions substantially similar to an underground mine.  Petitioner's arguments fail in the instant case.  The Act clearly defines "coal or other mine."  Petitioner's interpretation of the Act attempts to redefine certain statutory provisions without taking into consideration Congress' definition of a "mine" that includes all of the machinery and land above the mine.  In this case, the underground coal mine operator built a belt structure that belts coal from the surface of the underground mine over lands owned by the mine to a preparation plant owned by the same mine. Claimant was exposed to coal dust at the tipple of the coal mine owned by the same operator.  Petitioner's arguments attempt to gloss over the fact that the mine operator chose to belt the coal instead of using trucks or other means to transport the coal to an offsite prep plant.  Here, the mine and prep plant are connected by the belt line owned by the same company.

# III.   ARGUMENT

## Standard of Review

This appeal is from the BRB, U.S. Department of Labor, in a proceeding brought under the provision of the Black Lung Benefits Act ("BLBA"), as amended, 30 U.S.C. §§ 901-944 (2012) to wit: BRB Nos. 23-0180 BLA and 23-0181 BLA, affirming Administrative Law Judge Boucher Decision and Order Awarding Benefits.  Fairfield Southern appealed, as of right, and jurisdiction for this appeal is pursuant to 33 U.S.C. § 921(c).  This appeal arises within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit, as Claimant performed his coal mine employment in Alabama. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc)

The scope of review in this case is limited to determining whether the Board erred by affirming the ALJ's decision. In making this determination we recognize that "[t]he Board is required to uphold the ALJ's decision if it is in accordance with the law and supported by substantial evidence from the entire record." *Stomps v. Director, Office of Workers' Compensation Programs*, 816 F.2d 1533, 1534 (11th Cir.1987); *Foreman v. Director, Office of Workers' Compensation Programs*, 794 F.2d 569, 570 (11th Cir.1986). See 30 U.S.C. Sec. 932(a); 33 U.S.C. Sec. 921(b)(3); 20 C.F.R. Sec. 802.301 (1985).

**A.    The Board did not err in ruling that Barr was employed for fifteen years or more in one or more underground mines within the meaning of the Act and the Regulations.**

"Under Amended Section 411(c)(4), if a miner establishes at least 15 years of employment 'in one or more underground mines,' or employment 'in a coal mine other than an underground mine' in conditions 'substantially similar to conditions in an underground mine' and establishes that he or she has a totally disabling respiratory impairment, there will be a rebuttable presumption that he or she is totally disabled due to pneumoconiosis." 30 U.S.C. §921(c)(4), amended by Pub. L. No. 111-148, §1556(a), 124 Stat. 119 (2010) (to be codified at 30 U.S.C. §921(c)(4)). If the presumption is invoked, the burden of proof shifts to the employer to disprove the existence of pneumoconiosis, or to establish that the miner's pulmonary or respiratory impairment "did not arise out of, or in connection with," coal mine employment. 30 U.S.C. § 921(c)(4). *Muncy v. Elkay Mining Co.*, BRB No. 11-0187.

The Department of Labor issued 20 C.F.R. § 718.305(b)(1) which provides that a claimant may invoke the rebuttable presumption of pneumoconiosis by showing that he:

> **(1)** engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and
> **(2)** The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

**(3)** The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

Congress at, 30 U.S.C. § 802, defined a coal mine as:

> **(1)** "coal or other mine" means (A) an area of land from which minerals are extracted in nonliquid form or, if in liquid form, are extracted with workers underground, (B) private ways and roads appurtenant to such area, and (C) lands, excavations, underground passageways, shafts, slopes, tunnels and workings, structures, facilities, equipment, machines, tools, or other property including impoundments, retention dams, and tailings ponds, on the surface or underground, used in, or to be used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, or to be used in, the milling of such minerals, or the work of preparing coal or other minerals, and includes custom coal preparation facilities. In making a determination of what constitutes mineral milling for purposes of this chapter, the <u>Secretary</u> shall give due consideration to the convenience of <u>administration</u> resulting from the delegation to one Assistant Secretary of all authority with respect to the health and safety of miners employed at one physical establishment;
>
> **(2)** For purposes of subchapters II, III, and IV, *"coal mine"* means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, *used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or <u>anthracite</u> from its natural deposits in the earth by any means or method, and the <u>work of preparing the coal</u> so extracted, and <u>includes custom coal preparation facilities</u>.* (emphasis supplied)

As noted, this definition is applicable to Subchapter IV and its Parts. Therefore, it is applicable to Subchapter IV at 30 U.S.C. § 921(c)(4). As is evident under Section 802, the Act considers the area of land and all structures, such as the belt line and prep plant in the instant case, to be considered a "coal mine" under the Act. The plain language of the Act, including the definition of an "underground mine" at Section 725.101, reveal the reason why Mr. Barr's years of employment at the prep plant, which is connected to the underground mine by the belt structure on lands owned by the same operator, are qualifying. Section 725.101 defines coal mine and underground mine under the Act as follows:

> **(12)** **"Coal mine** means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, placed upon, under or above the surface of such land by any person, <u>used in, or to be used in, or resulting from, the work of extracting in such area</u> bituminous coal, lignite or anthracite from its natural deposits in the earth by any means or method, and in the work of preparing the coal so extracted, and includes <u>custom coal preparation facilities</u>."

> **(30)** **"Underground coal mine** means a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining; including all land, structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, appurtenant thereto."

20 CFR § 725.101(a)(12), (30)

This definition in the regulations is consistent with the definition in the Act. Importantly, in order to invoke the presumption at Section 921(c)(4), Claimant must

demonstrate that he worked at an underground mine for 15 years. Claimant has satisfied this burden by demonstrating that his employment at U.S. Steel and Fairfield Southern included transporting empty rail cars to the Concord preparation plant for loading of coal which is belted directly to the plant from the underground mine.

First, Petitioner argues that the Board found that U.S. Steel owned and operated the two facilities connected by the belt line without any factual basis. (Petitioner's Brief at 61) However, the record clearly shows otherwise. Petitioner's own witness, Richard Jones, (A312) testified that Oak Grove mine was the company belting the coal to the prep plant. (A351) He further testified that U.S. Steel owned the Concord prep plant and its railroad tracks as well as the Oak Grove mine, but knew it was later sold. (A365-366) Petitioner's own witness and ex-employee confirmed that U.S. Steel owned both the prep plant and the underground mines. Furthermore, it confirms that U.S. Steel was the operator belting the coal from the underground mine to the prep plant.

Secondly, Petitioner urges this Court to ignore the definition of a coal mine in applying Section 921(c)(4) and instead to read it as if it only applies to miners who were actually "in" the underground mine. The Tenth Circuit Court of Appeals offers some persuasive guidance regarding this exact argument. In *Sunnyside Coal Company v. Director, OWCP,* the Tenth Circuit held that the definition of coal mine

found at Section 802(h)(2) when used in conjunction with the term "in" does not preclude miners who are not underground but instead are on the surface of an underground mine. Similarly, Sunnyside Coal argued that the Miner had to be inside of the underground mine to be able to invoke the presumption or the miner would have to prove that the surface was substantially similar to an underground mine. The Court stated,

> Sunnyside likewise argues that Congress's use of the preposition "in" within the rebuttable presumption provision shows that Fossat must be underground to qualify for the rebuttable presumption without a showing of substantial similarity in conditions. See 30 U.S.C. § 921(c)(4) (If a miner "was employed for fifteen years or more in one or more underground coal mines, and . . . if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." (emphasis added)). However, the substantially similar provision found in the same sub-section, which applies to surface miners, provides for "a miner's employment in a coal mine other than an underground mine." Id. (emphasis added). The BLBA uses the word "in," therefore, to refer to miners who work at surface mines. Given the "presumption that a given term is used to mean the same thing throughout a statute," the preposition "in" does not preclude above-ground miners working in an underground coal mine from qualifying for the rebuttable presumption without a showing of substantial similarity. See *Mohamad*, 566 U.S. at 456 (quoting *Brown*, 513 U.S. at 118); 30 U.S.C. § 921(c)(4).

> Such an understanding of the word "in" is consistent with the ordinary and common meaning of "in" when "used as a function word to indicate location or position in space or

in some materially bounded object." In, Websters Third New International Dictionary 1139 (Philip Babcock Gove ed., 1971); see *Perrin*, 444 U.S. at 42 ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). In this context, "in" indicates Fossat's position within the bounds of a coal mine, including "an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person ...." 30 U.S.C. § 802(h)(2) (emphasis added).[6] Thus, Fossat proved he was employed for fifteen years or more in one or more underground coal mines.

*Sunnyside Coal Co. v. Dir., Office of Workers Comp. Programs*, 23-9517 (10th Cir. Aug 13, 2024)

As previously noted by the Eleventh Circuit Court of Appeals, "the Act, being remedial legislation, should be liberally construed in favor of the claimant." *Brown v. Director, Office of Workers' Compensation Programs,* No. 87-7358, slip opinion at 4309, 4312 (11th Cir. August 15, 1988) ("The history of [the Act] expresses a concern for miners and their right to fair compensation ..."); *Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.,* 598 F.2d 945, 951 (5th Cir.1979) ("One purpose of the 1977 amendments [to the Act] was to liberalize benefits for claimants."). *Baker v. US. Steel Corp.,* 867 F.2d 1297, 1299 (11th Cir. 1989). Therefore, the Tenth Circuit's common-sense approach is applicable to Mr. Barr's employment at the prep plant which is

connected to the underground mine by belt and land owned by the same mining company. Petitioner admits that the belts connect the operations. (See Brief of Petitioner at 6 and 19) Petitioner also argues that Congress did not intend for above ground miners to be able to invoke the rebuttable presumption. However, the *Sunnyside* Court concluded that the Senate did, in fact, intend to include miners such as Barr. *Sunnyside* at 3. Petitioner's arguments attempt to convince this Court to rule that the distance of the belt line connecting all of the Operator's mining operations should change a miner's status. However, the plain language of the Act and its definitions certainly intended for miners who worked in mining operation connected to an underground mining facility to be included.

In addition, the loading of coal is considered "work of preparing the coal" under the Act. See 30 U.S.C. § 802(i) The Sixth Circuit when considering whether OSHA or MSHA regulations should apply to road and bridges on a haul road noted that the lands underneath a conveyor belt system would be treated differently because the conveyors were a function of loading coal which is specifically delineated under the Act. *Bush & Burchett, Inc. v. Reich*, 117 F.3d 932, 939 (6th Cir. 1997) This is further persuasive proof that U.S. Steel's choice to belt the coal to the prep plant did not separate the prep plant miners from coverage under the Act.

Interestingly, the Petitioner is not necessarily arguing that Claimant's time working at the prep plant when the Concord mine was open was not qualifying. Claimant at all times worked at the same prep plant. The only factor that changed was where the coal was extracted. U.S. Steel chose to utilize the same prep plant for both U.S. Steel owned coal mines by connecting the Oak Grove mine to the prep plant by conveyor belt. It is nonsensical to suddenly categorize his employment differently based on which mine the coal was extracted when at all times the Concord Prep Plant was connected to an underground mine site. One cannot arbitrarily disconnect U.S. Steel's operations when they are clearly one contiguous operation. However, Petitioner expects this Court to do exactly that by finding the belt structures are not part of the mining operations. (See Petitioner Brief "The sites are connected by two conveyor belts, but the land between them is not devoted to mining operations but rather consists of (seven miles of) undeveloped (forested) lands." A57) Petitioner's position would rewrite the Act and remove any language about the area of land and structures above underground mining facilities. This interpretation is simply wrong.

In *Baker v. U.S. Steel Corp.*, the Eleventh Circuit Court of Appeals, in interpreting the definition of a "miner" under the Act, considered the following two-pronged test: (1) whether the individual seeking benefits performed an activity

related to the extraction or preparation of coal [the function requirement] and (2) whether the individual worked in or around a coal mine [the situs requirement]. *Baker v. U.S. Steel Corp.*, 867 F.2d 1297, 1298 (11th Cir. 1989) *Baker* was a an employee of U.S. Steel who worked at a repair shop that was located no closer than one-half mile to any of U.S. Steel's coal mines, but in a central location between these coal mines. The Eleventh Circuit agreed with the Seventh Circuit Court in *Ziegler*, noting that "even though the 'geographical distance from extraction site is a proper factor to be considered in determining whether the situs requirement has been satisfied,' the application of 'an inflexible fixed-distance rule' would be inappropriate." *Baker v. U.S. Steel Corp.*, 867 F.2d 1297, 1300 (11th Cir. 1989) citing *OWCP v. Ziegler Coal Co.*, 853 F.2d 529, 535 (7th Cir. 1988)

The Eleventh Circuit in *Baker* also held that the situs requirement of determining whether a claimant is a miner, would have been met, should U.S. Steel have chosen to operate its repair shop on-site of its three mines. (Id.) The Court noted that under the ALJ's interpretation of the Act, workers in a more efficient repair shop maintained for the company's convenience are denied coverage under the Act, regardless of their exposure level. (Id.) The Sixth Circuit Court of Appeals in *OWCP v. Consolidation Coal Company*, relying on the Eleventh Circuit's holding in *Baker* noted that when determining whether a Claimant has satisfied the situs requirement found it significant that where a machine shop is situated in a central

location for the efficiency and economy of the employer, it will ordinarily be held to be "around" the coal mine.  *OWCP v. Consolidation Coal Co.*, 884 F.2d 926, 932 (6th Cir. 1989)  While the Eleventh Circuit in *Baker* was considering what factors were relevant in determining whether a claimant is a "miner" under the Act, it also considered that an employer should not be able to escape liability under the Act, just because it chooses to have its coal mine operations in locations off-site of the underground mine.  In the instant case, U.S. Steel chose to belt its coal from the Oak Grove mine to the already existing Concord preparation plant opposed to building another preparation plant on the site of the Oak Grove mine.  To determine that the miners, who work at the Concord preparation plant are not in qualifying coal mine employment because of the employer's choices related to efficiency and economy is in complete opposition to the intent of the Act, which the Eleventh Circuit in *Baker* determined should be liberally construed in favor of the Claimant.  *Baker* at 1300.  Furthermore, it would ignore the fact that at all times U.S. Steel was the one operating the underground mine and prep plant, which were connected by its own belt system.

B.  **The Board Did Not Exceed Its Authority in Overturning ALJ Romero's Denial of Benefits**

The Benefit Review Board's scope of review is defined by statute.  The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with the applicable law.  33

U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a); *O'Keefe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359 (1965).

Petitioner argues that the BRB erred when it overruled ALJ Romero's Findings in his August 3, 2018 Decision and Order Denying Benefits of Modification. (A63) Specifically, Petitioner alleges that the BRB reweighed evidence related to the calculation of the number of days in which Claimant was employed as a miner under the Act. However, the BRB did not reweigh the evidence and instead found that Judge Romero's interpretation of the facts did not meet the applicable law. (A133) The BRB stated:

> "We reverse, however, the administrative law judge's subsequent determination that Judge Odegard erred in finding all of the Miner's work for U.S. Steel constituted qualifying coal mine employment. Because the Miner was involved in incidents at the Coke Works, and the Edgewater and Wenonah iron ore mines,1 the administrative law judge found he did not work "exclusively" at an underground site and therefore his "coal mine employment [with U.S. Steel] is likely far less than 14 years." Decision and Order on Modification at 31-33.
>
> Contrary to the administrative law judge's determination, Claimant does not have to establish the Miner worked "exclusively" at Concord to get credit for that employment, nor did Judge Odegard find he worked only at Concord as a factual matter. *See* 20 C.F.R. §725.101(a)(32) ("A 'working day' means any day or part of a day for which a miner received pay

---

1 It is unclear why the administrative law judge found Edgewater to be an iron ore mine. The Miner specifically identified Edgewater as a coal mine, where he loaded coal. Director's Exhibits 1, 2 (Form CM-913, Description of Coal Mine and Other Work, dated September 13, 1994 and October 2, 2001).

for work as a miner."). As discussed, Judge Odegard found the Miner was "regularly" exposed to coal mine dust as a transportation worker. *See Jones*, 386 F.3d at 992; Decision and Order on Modification at 26, *referencing* Director's Exhibit 73 at 14-15, 17-18 and Director's Exhibit 77 at 6. Moreover, none of the incidents involving the handling of iron ore and metal products that the administrative law judge referenced contradict the Miner's testimony that he loaded coal at the Concord Mine site "one time in one shift . . . for five days" per week, nor even necessarily indicate he was not also at the Concord Mine on the particular days the incidents occurred. Director's Exhibit 56 (January 30, 2013 Hearing Transcript at 59).

Thus we reverse the administrative law judge's modification finding, and reinstate Judge Odegard's original determination that the Miner's work for both U.S. Steel and Fairfield delivering empty rail cars to the preparation plant at the Concord site, spotting and positioning the cars, and overseeing the loading of processed coal for delivery constituted the work of miner, thereby establishing seventeen years and four months of coal mine employment. *See Hanna*, 860 F.2d at 93." "A133-A134"

The Regulations define what is a working day under the Act. As noted above, Petitioner's characterization of Claimant's coal mine employment would be a restrictive reading of the Act and certainly would not coincide with the remedial nature of the Act as is required by the Eleventh Circuit. In any event, the Benefits Review Board's holdings did not reweigh the evidence but instead came to the only conclusion that would be allowed by the Act and the Regulations in calculating years of coal mine employment.

ALJ Romero erred in his application of the law requiring the BRB to overturn his application and order the proper calculation to be considered by the subsequent ALJ on remand in determining whether Fairfield Southern could rebut the presumption. Claimant's testimony showed that he worked at the prep plant five days per week. Respondents have never offered any evidence to the contrary other than to show that Claimant also worked at other locations on specific instances. Instead, Judge Romero found that because of these remote instances Claimant most likely did not work exclusively at the Concord prep plant to get credit for the claimed employment. This was clear error and was not consistent with the applicable law. At no point in time did the BRB reweigh the evidence.

## CONCLUSION

Claimant's award of benefits should be affirmed as it is consistent with the applicable law.

/s/ John R. Jacobs
John R. Jacobs
J. Thomas Walker
Attorneys for Claimant

OF COUNSEL:

MAPLES, TUCKER & JACOBS, LLC
2001 Park Place N., Ste. 1325
Birmingham, AL 35203
Telephone: (205) 322-2333
jack@mtandj.com
tom@mtandj.com

## CERTIFICATE OF COMPLIANCE

The text of this document complies with the type-volume limit of FRAP 27(d)(2)(A) because it, excluding the parts of the document exempted by FRAP 32(f), contains 4,565 words.  Furthermore, this document complies with the typeface and type-style requirements of FRAP 32(a)(5) and FRAP 32(a)(6), respectively.

/s/ John R. Jacobs
OF COUNSEL

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Brief has been served this the 23rd day of December, 2024, upon counsel of record by placing same in the United States mail properly addressed and postage pre-paid, as follows:

Michael Chance
District Director
U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite C-3515, NDOL
Washington, D.C. 20210

Thomas O. Shepherd, Jr.
Clerk of the Appellate Boards
Benefits Review Board
P.O. Box 37601
Washington, D.C. 20013-7601

Acting Associate Solicitor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, D.C. 20210

Alice E. Loughran, Esq.
Mark C. Savignac, Esq.
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

/s/ John R. Jacobs
OF COUNSEL