FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10651

_____

FAIRFIELD SOUTHERN COMPANY,

                                                      *Petitioner,*

versus

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,
BENEFITS REVIEW BOARD,
EARLENE BARR,
   o/b/o Billie Burke Barr, Jr.,

                                                      *Respondents.*

_____

Petition for Review of a Decision of the
Benefits Review Board
Agency No. 23-1080-BLA / 23-1081-BLA / 18-0567-BLA

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is from a grant of benefits under the Black Lung Benefits Act. Billie Barr, Jr., developed a disabling respiratory condition after transporting coal for U.S. Steel and Fairfield Southern Co. for over fifteen years. For some of that time, he worked at an aboveground preparation plant connected to an underground coal mining site by over five miles of conveyer belts. The Black Lung Benefits Act grants coal miners like Barr a presumption that qualifies them for benefits if they establish a disabling respiratory or pulmonary impairment after fifteen years of work "in one or more underground coal mines." 30 U.S.C. § 921(c)(4).

The question for us is whether the Benefits Review Board erred in holding that Barr—as an aboveground transportation worker more than five miles away from where coal was extracted—worked "in one or more underground coal mines." Because the statutory definition of "coal mine" includes aboveground structures, we join the Tenth Circuit in holding that Barr's aboveground transportation work does not disqualify him from the presumption. But the statute also defines a "coal mine" to include those facilities on, under, or above a particular "area of land." 30 U.S.C. § 802(h)(2). Consistent with that statutory definition, the administrative law judge found that the preparation plant where Barr worked was not part of the underground mine (although it may have been another kind of mine) and declined to apply the presumption in his favor. Because the Benefits Review Board erroneously reversed the ALJ's finding, we grant Fairfield's petition for

review, vacate the Board's decision, and remand for proceedings consistent with this opinion.

### I.

We start by summarizing the statutory and regulatory framework because it provides context for this dispute. We then turn to Barr's work history and the procedural history of this appeal.

#### A.

The Black Lung Benefits Act provides disability benefits to miners who suffer from pneumoconiosis, a "chronic dust disease" of the lung that arises out of coal mine employment. *See* 30 U.S.C. §§ 902(b), 922(a)(1). The Act defines "miner" to include an individual who worked in "transportation in or around a coal mine" to the extent that he "was exposed to coal dust as a result of such employment." 30 U.S.C. § 902(d). By regulation, miners are eligible for benefits if they can establish four things: (1) that they suffer from pneumoconiosis (2) that arose out of their coal mine employment (3) and contributed to (4) their total disability. *See* 20 C.F.R. § 725.202(d).

Certain categories of miners are entitled to presumptions that establish one or more of these elements. *See* 30 U.S.C. § 921(c). If any miner proves that he has complicated pneumoconiosis, section 921(c)(3) entitles that miner to an irrebuttable presumption that his disease is totally disabling. *See* 30 U.S.C. § 921(c)(3); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 10–11 (1976). If a miner

proves that he has a totally disabling respiratory disease and worked for at least fifteen years "in one or more underground coal mines," section 921(c)(4) entitles that miner to a rebuttable presumption that pneumoconiosis caused his total disability. *See* 30 U.S.C. § 921(c)(4); *Oak Grove Res., LLC v. Dir., OWCP*, 920 F.3d 1283, 1287 (11th Cir. 2019). Miners who worked "in a coal mine other than an underground mine" can receive the same presumption. *See* 30 U.S.C. § 921(c)(4). But they must prove that conditions in the mine were "substantially similar" to conditions in an underground mine. *See id.*

The Act does not define "underground coal mine." But it defines "coal mine" as "an area of land" where "bituminous coal, lignite, or anthracite" is extracted "from its natural deposits in the earth by any means or method." *See* 30 U.S.C. § 802(h)(2). That mine also includes all "property . . . placed upon, under, or above the surface of such land" that is used to extract or prepare the coal. *See id.* The Act defines "coal mine" to "include[] custom coal preparation facilities" as well. *See id.*

An implementing regulation defines an "[u]nderground coal mine" as "a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining." *See* 20 C.F.R. § 725.101(a)(30). That definition includes all land, buildings, and equipment "appurtenant thereto," *see id.*, and has done so since 1971, *see* 20 C.F.R. § 410.110(i) (1971). No implementing regulation defines "appurtenant."

### B.

With this framework in mind, we turn to the facts of this case. Billie Barr, Jr., worked as a railroad engineer for first U.S. Steel and then Fairfield Southern Co. from 1965 to 1997. From 1965 to 1981, Barr transported rail cars for U.S. Steel to the Concord underground mine, miners filled those cars with coal, and Barr took the cars to other facilities. He was absent from work for several periods of multiple months during this time. When he was working, his job regularly exposed him to coal dust.

Between 1982 and 1984, the Concord underground mine closed, and the site began to operate as a coal preparation plant. A miles-long system of conveyor belts transported coal to that plant from the Oak Grove underground mine, a site at least five miles away. Other than the belts, the land between the Concord preparation plant and the Oak Grove mine was forested and undeveloped. The Concord preparation plant washed, dried, and stored coal from the Oak Grove Mine. From 1984 to 1987, Barr picked up prepared coal for Fairfield from the Concord preparation plant and transported it by rail to other facilities. In 1987, Barr stopped hauling prepared coal from the Concord preparation plant. He continued to work for Fairfield as a rail transport operator until 1997, but he no longer hauled coal.

Before his job responsibilities changed, Barr spent years around coal. He also smoked a pack and a half of cigarettes per day for about forty years. He started to experience breathing problems before 1994 and filed for benefits under the Black Lung Benefits Act

that year. Three years later, he used oxygen tanks for at least eight hours per day. He died before his administrative proceedings concluded, and his widow filed a claim for survivor's benefits.

C.

We now turn to the procedural history of Barr's claim. Because of Barr's work and medical history, his claim for benefits relied heavily on establishing his right to a statutory presumption in his favor.

An administrative law judge concluded that Barr was not eligible for the presumption and denied Barr's claim for benefits. The ALJ concluded that Barr worked for U.S. Steel "in an underground mine" for fewer than fifteen years between 1965 and 1981 because of absences from work. And he concluded that Barr's work for Fairfield at the Concord preparation plant did not qualify as work "in an underground mine." He found that the Concord preparation plant was not "appurtenant" to the Oak Grove mine because they were at least five miles apart. And he concluded that the belt system that connected the two facilities did not make them part of the same underground mine. The ALJ also found that conditions in the Concord preparation plant were not "substantially similar" to the conditions in an underground mine, so he did not count Barr's work at that plant towards the section 921(c)(4) presumption. These findings led him to conclude that Barr was ineligible for the presumption.

Barr appealed the ALJ's decision to the Benefits Review Board, and it reversed the decision. The Board disagreed with the

24-10651               Opinion of the Court                          7

ALJ about whether Barr's work at the Concord preparation plant was work "in an underground coal mine." It held that the ALJ "erred as a matter of law" when he determined that the Concord preparation plant was not "appurtenant" to—and therefore not part of—the Oak Grove mine. Billie B. Barr, BRB Nos. 18-0567 BLA & 18-0567 BLA-A at 12 (Jan. 27, 2021). The Board recognized that the ALJ did not formally define "appurtenant," but it reasoned that he implemented a "strictly distanced-based construction of the term." Id. at 11. The Board held that this construction was a legal error because "appurtenant" relates more to "shared functions and relationships between properties" than their proximity. Id. at 12.

Applying that definition, it found that the Concord preparation plant and Oak Grove mine were owned by the same company, physically connected by a conveyor belt, and collectively prepared coal for sale. It concluded that these shared functions and relationships made the Concord preparation plant "appurtenant" to the Oak Grove mine "regardless of the distance separating them." Id. at 13. Because it found that the two facilities were "appurtenant," the Board reversed the ALJ's finding that Barr's employment at the plant did not constitute work in an underground mine. Based on Barr's work at the Concord preparation plant and Concord mine, it then held that Barr qualified for benefits under the section 921(c)(4) presumption.

The Board explicitly did not reach Barr's alternative argument that the Concord underground mine retained its status as an underground mine after it became inactive. Id. at 14 n.18. The

Board explained in a footnote that if it later determined that the Concord site ceased to be an underground mine, it would remand to the ALJ. *Id.* The ALJ could then reconsider whether conditions at the Concord site were "substantially similar" to conditions in an underground mine. *Id.*

On remand from the Board's decision, an ALJ determined that Fairfield failed to rebut the section 921(c)(4) presumption and awarded Barr benefits. Fairfield appealed to the Board, and it affirmed.

Fairfield petitioned for review of the Board's decision.

## II.

We review *de novo* the Benefits Review Board's determination that the ALJ's decision was not in accordance with the law, *Lollar v. Ala. By-Products Corp.*, 893 F.2d 1258, 1261–62 (11th Cir. 1990), and the Board's interpretations of the Black Lung Benefits Act and its implementing regulations, *see William Bros. v. Pate*, 833 F.2d 261, 264–65 (11th Cir. 1987) (citations omitted).

We also review *de novo* whether the Board adhered to its statutory standard of review for factual determinations. *See Lollar*, 893 F.2d at 1261. Under that standard, an ALJ's factual findings are conclusive if they are "supported by substantial evidence" considering the full record. 33 U.S.C. § 921(b)(3); *see also Lollar*, 893 F.2d at 1261. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See *Lollar*, 893 F.2d at 1261–62 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III.

Fairfield argues that Barr is not entitled to benefits for three reasons. First, Fairfield asserts that anyone who works above ground doesn't qualify for the section 921(c)(4) presumption. Second, it argues that, even if aboveground work in an underground mine can qualify, the ALJ did not err in determining that Barr's work did not count because it was in an aboveground processing plant several miles from where coal was extracted. Third, Fairfield contends that, if we agree with its position, we should reinstate the ALJ's benefits denial instead of remanding for further proceedings. We address each argument in turn.

### A.

We start with Fairfield's argument that an aboveground worker like Barr does not work "in one or more underground coal mines" as a matter of law. Only one other court, the Tenth Circuit, has addressed this statutory interpretation question.[1] And it held

---

[1] Before the Supreme Court changed the degree of deference owed to agency interpretation of statutes in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), the Sixth and Fourth Circuits each deferred to the agency's definition of an "underground coal mine" in 20 C.F.R. § 725.101(a)(30). Those courts read it to permit aboveground workers at underground coal mines to qualify for the section 921(c)(4) presumption. *See Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1058 (6th Cir. 2013); *Kanawha Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 539 Fed. App'x 215, 218 (4th Cir. 2013).

that, for the purposes of the statutory presumption, a miner can work in an underground coal mine even if his job tasks occur above ground. *See Sunnyside Coal Co. v. Dir., Off. Workers' Comp. Programs*, 112 F.4th 902, 912 (10th Cir. 2024).

We agree with the Tenth Circuit's reading of the statute. This is so for three reasons.

First, the statutory definition of "coal mine" encompasses all mine-related property, even if it is above ground. The statute defines a "coal mine" to include buildings placed "upon, under, or above the surface" of an area of land. 30 U.S.C. § 802(h)(2); *see Sunnyside*, 112 F.4th at 911. An underground coal mine, because it is a "coal mine," also includes such aboveground property. *See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018) (explaining that "[a]ccording to the ordinary understanding of how adjectives work, 'critical habitat' must also be 'habitat.'"); *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 341 (2019) (explaining that "full costs" are still "costs"). Adjectives pick out a subset of the categories that they modify, and subsets necessarily have the characteristics common to the larger group. *See Weyerhauser*, 586 U.S. at 19–20. Here, the adjective "underground" picks out a set of "coal mines" with underground mining operations, *see* 20 C.F.R. § 725.101(a)(30), and those "coal mines" still include buildings placed above ground.

For its part, Fairfield stresses that the phrase "coal mine" is modified by "underground." But that adjective refers to the type of mine, not the location of an employee in the mine. Fairfield reads

the statute as if it requires work "underground in a coal mine." But it demands work "in an underground coal mine," and those mines have aboveground components. *See* 30 U.S.C. § 802(h)(2).

Second, this reading is more consistent with how the statute as a whole uses the word "in" and categorizes miners for the purposes of presumptions. We must "'consider the entire text [of a statute]' . . . when interpreting any particular part of the text." *In re Cumbess*, 960 F.3d 1325, 1334 (11th Cir. 2020) (quoting *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019)).

Fairfield asserts that "in" an underground coal mine means "inside of" or enclosed within that mine. Appellant's Br. at 34–35. But that reading gives the word "in" a meaning that is inconsistent with how it is used in the rest of 30 U.S.C. § 921(c)(4). That statute says, "in a coal mine other than an underground mine" just two sentences after "in one or more underground coal mines." 30 U.S.C. § 921(c)(4). "[I]n a coal mine other than an underground mine" cannot mean "enclosed within" or "inside of" that mine because those mines are definitionally above ground. Reading "in" to instead mean "within the boundaries of"—its plain meaning—fits comfortably with both statutory phrases. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1139 (1971) (defining "in" as a function word used "to indicate location or position in space or in some materially bounded object"); Black Lung Benefits Act of 1972, Pub. L. No. 92-303, 86 Stat. 154 (adding the fifteen-year presumption to the Black Lung Benefits Act in 1972). Under that reading, the first part of section 921(c)(4) extends its presumption to

qualifying miners who worked within the bounds of an underground coal mine. 30 U.S.C. § 921(c)(4). And its second part extends the same presumption to qualifying miners who worked within the bounds of other coal mines. Because "[w]e ordinarily presume that instances of the same word in the same statute will have the same meaning," *see Sunshine State Reg'l Ctr., Inc. v. Dir., US Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1345 (11th Cir. 2025), we favor a reading of "in" that harmonizes its usage across section 921(c)(4).

Our reading is also more consistent with how section 921(c)(4) categorizes miners than Fairfield's reading. *See In re Cumbess*, 960 F.3d at 1334 (interpreting a statutory provision considering "the physical and logical relation" of its many parts). Fairfield reads "in one or more underground mines" to categorize miners based on where they worked relative to the surface of the earth. But section 921(c)(4) categorizes miners based on the type of mine where they worked—surface or underground—not their locations vis-à-vis the earth's surface. *See* 30 U.S.C. 921(c)(4). Our reading of "in one or more underground coal mines" characterizes miners that same way, and it is more consistent with section 921(c)(4)'s structure.

Third, the Act's implementing regulations have long treated aboveground workers at an underground coal mine as employees "in an underground coal mine." *See* 20 C.F.R. § 410.110(i)–(j) (1971); 20 C.F.R. § 725.101(a)(30). Courts may "seek aid from the interpretations of those responsible for implementing particular

statutes." *Perez v. Owl, Inc.*, 110 F.4th 1296, 1307–08 (11th Cir. 2024) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)). "Interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful." *Id.* at 1308 (quoting *Loper Bright*, 603 U.S. at 394). And the Act's first implementing regulations, like the current versions, define an "underground coal mine" to include aboveground land, buildings, and equipment. 20 C.F.R. § 410.110(i) (1971); 20 C.F.R. § 725.101(a)(30). Consistent with that longstanding definition, those first regulations also explain that employees can work "in an underground coal mine . . . above the surface at the mine." 20 C.F.R. § 410.110(j) (1971). We find those early interpretations of "underground coal mine" persuasive. Together with the Act's statutory scheme and definition of a "coal mine," they establish that a miner can work "in an underground coal mine" above the surface of the earth.

Fairfield makes three counterarguments, but they are not convincing.

First, Fairfield argues that the statute's purpose is defeated if it applies to workers employed above ground. But the best evidence of the Act's purpose is its text. *See State v. Meadows*, 88 F.4th 1331, 1342 (11th Cir. 2023) (citations omitted), *cert. denied*, 145 S. Ct. 545 (2024). The plain meaning of section 921(c)(4)'s text is that all miners employed within the bounds of an underground coal mine, not solely those who work below ground, may qualify for its presumption. And, even if section 921(c)(4) had a different purpose,

a "purpose can't overwrite [that] ordinary understanding." *Gorecki v. Comm'r, Soc. Sec. Admin.*, 143 F.4th 1295, 1301 (11th Cir. 2025) (citing *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 911 (11th Cir. 2024)).

Second, Fairfield asserts that our reading makes section 921(c)(4) redundant with section 921(c)(3) by creating too much overlap between the categories of miners eligible to pursue either section's presumptions. But the two sections remain distinct. Section 921(c)(3) requires miners to prove that they have complicated pneumoconiosis, a serious form of the disease, to gain an irrebuttable presumption that their diseases are totally disabling. *See Usery*, 428 U.S. at 7, 10–11. Section 921(c)(4) requires miners to prove different facts. It applies only to miners who submit medical evidence that does not meet section 921(c)(3)'s requirements. *See* 30 U.S.C. § 921(c)(4). And it requires those miners to prove that they are totally disabled and worked for fifteen years in qualifying employment. *See id.* If satisfied, it assumes the distinct fact that pneumoconiosis caused their disabilities. *See id.* Those differences exist irrespective of the meaning of "in one or more underground coal mines."

Third, Fairfield maintains that the Supreme Court interpreted "in one or more underground coal mines" to require work underground in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976). We disagree. In that case, miners challenged section 921(c)(4)'s presumption for lack of due process. *Id.* at 30–31. In resolving that constitutional claim, the Court asked whether there is

24-10651               Opinion of the Court                    15

"some rational connection" between the evidence required by section 921(c)(4) and the presumption it provides. *Id.* at 28 (citations omitted). The Supreme Court held that the two were rationally related, in part, because the Surgeon General told Congress that the prevalence of pneumoconiosis increases linearly after fifteen years underground. *See id.* at 30–31. But *Usery* did not consider or decide whether miners "in . . . underground coal mines" must work below ground. *See id.*

In short, the Act's expansive definition of a "coal mine," section 921(c)(4)'s statutory scheme, and the Act's implementing regulations establish that work "in an underground coal mine" may include work above the surface of the earth.

B.

Having rejected Fairfield's first argument, we turn to its second—that the ALJ reasonably concluded that the Concord preparation plant five or more miles from the Oak Grove mine is not a part of that mine. Barr argues that the Board correctly reversed the ALJ's determination because the Concord preparation plant was functionally connected to the Oak Grove mine by miles of conveyer belts.

We agree with Fairfield. To be sure, the aboveground Concord processing facility is a type of "coal mine" because the statute covers "coal preparation facilities." 30 U.S.C. § 802(h)(2). But the ALJ determined that the Concord processing facility was not an

underground coal mine or part of the Oak Grove mine. We think the Board erred in reversing the ALJ for two reasons.

First, the Board erred as a matter of law when it held that the Concord preparation plant could be a part of the Oak Grove coal mine "regardless of the distance separating them." Billie B. Barr, BRB Nos. 18-0567 BLA & 18-0567 BLA-A at 13 (Jan. 27, 2021). The statutory definition of a "coal mine" includes property upon, under, or above a particular "area of land." *See* 30 U.S.C. § 802(h)(2); Black Lung Benefits Act of 1969, Pub. L. No. 91-173, 83 Stat. 744 (enacting the current definition of "coal mine"). Areas of land are geographically bounded. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 115 (1971) (defining "area" as a "definitely bounded piece of ground set aside for a specific use or purpose" or "any particular extent of space"). That statutory definition makes the distance between a coal extraction site and a structure relevant to determining whether the structure is part of the same "coal mine."

The Board reached its contrary conclusion—that physical proximity is largely irrelevant—based on the word "appurtenant" in the regulatory definition of an "underground coal mine." 20 C.F.R. § 725.101(a)(30). The Board said that the word "appurtenant" "more accurately relates to shared functions and relationships between properties than . . . their proximity." Billie B. Barr, BRB Nos. 18-0567 BLA & 18-0567 BLA-A at 12 (Jan. 27, 2021). We disagree. The Board's geographically unlimited interpretation of this regulation directly conflicts with the Act's geographically

24-10651               Opinion of the Court                        17

limited definition of a particular "coal mine." *See* 30 U.S.C. 802(h)(2). And where an interpretation of a regulation conflicts with a statute, the statute controls. *See United States v. Marte*, 356 F.3d 1336, 1341 (11th Cir. 2004) (citation omitted).

To be sure, the statutory definition of "coal mine" also includes a functional component. Section 802(h)(2) defines a "coal mine" to include structures that are functionally related to coal extraction—those structures "used in[] or resulting from" the work of extracting or preparing the coal, including "coal preparation facilities." 30 U.S.C. § 802(h)(2). But, to be a part of a *single* "coal mine," a structure must be "upon, under, or above" the same area of land. *See id*. In short, the Board was wrong to reverse the ALJ based on a definition of coal mine that makes geographical proximity largely irrelevant.

Second, given this understanding of the definition of "coal mine," the ALJ's factual finding that the plant was insufficiently physically connected to the Oak Grove mine to be a part of that underground coal mine is supported by substantial evidence. *See Lollar*, 893 F.2d at 1261–62 (citing *Richardson*, 402 U.S. at 401). Evidence is "substantial" if a reasonable mind might find it "adequate to support a conclusion." *See id*. (citing *Richardson*, 402 U.S. at 401). Although coal mines may extend for miles under the earth, there is very little record evidence about the scope of the "area of land" that constituted the Oak Grove coal mine. Instead, the record is unequivocal that the Oak Grove mining site and the Concord preparation plant were physically separated by miles of conveyor belts and

undeveloped land. This evidence reasonably supports the ALJ's conclusion that the two sites were too physically distant to be part of the same mine. *See Lollar*, 893 F.2d at 1261 (11th Cir. 1990). On this record, the Board should have deferred to the ALJ's factfinding on this point.

### C.

Because we agree with Fairfield that Barr's work at the Concord preparation plant was not work "in one or more underground coal mines," we turn to its argument that we should order the Board to reinstate the ALJ's initial benefits denial.

We disagree. Because the ALJ rejected the presumption for work in an underground coal mine, the ALJ's denial turned on its factfinding that conditions at the Concord preparation plant were not "substantially similar" to conditions in an underground mine. We cannot reinstate the ALJ's decision without endorsing that finding. The Board's reversal made that finding irrelevant, but the Board nonetheless explained that, if that fact issue were relevant, it would remand for further factual development. Of course, the Board didn't remand—its decision on the underground mine presumption made the factual issue a moot point. But, if the Board had remanded, such a remand would not constitute a final decision subject to our review. *See Redden v. Dir., Off. of Workers' Comp. Programs*, 825 F.2d 337, 338 (11th Cir. 1987) (citing *Jack. Shipyards, Inc. v. Est. of Verderane*, 729 F.2d 726, 727 (11th Cir. 1984)) (explaining that Board orders that remand cases to ALJs for further findings are not reviewable, final orders); *Cooper Stevedoring Co. v. Dir., Off. of*

*Workers' Comp. Programs*, 826 F.2d 1011, 1014 (11th Cir. 1987) (citations omitted) (same).

In any event, the Board did not decide whether the conditions of Barr's employment were comparable to those in an underground mine. And we will not pass on that issue without a full adjudication before the ALJ and Board. "It is the general rule that a federal appellate court does not consider an issue not passed on below." *United States v. Brown*, 587 F.3d 1082, 1088 (11th Cir. 2009) (citing first *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); and then *Bliss v. Equitable Life Assurance Soc'y of U.S.*, 620 F.2d 65, 70 (5th Cir. 1980)); *see also Sierra Club v. Leavitt*, 368 F.3d 1300, 1303 n.7 (11th Cir. 2004) (declining to address a question not reached by the agency decision under review). Because the Board's order did not resolve whether conditions at the Concord preparation plant were substantially similar to conditions in an underground mine, we decline to make that determination.

### IV.

We **GRANT** Fairfield's petition for review, **VACATE** the Board's decision, and **REMAND** for further proceedings consistent with this opinion.